UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE FEDERAL REPUBLIC OF NIGERIA; ABUBAKAR MALAMI, THE ATTORNEY GENERAL OF THE FEDERAL REPUBLIC OF NIGERIA,<br><br>      Applicants,<br><br>v.<br><br>VR ADVISORY SERVICES, LTD.; VR ADVISORY SERVICES (USA) LLC; VR CAPITAL GROUP, LTD.; VR GLOBAL ONSHORE FUND, L.P.; VR ARGENTINA RECOVERY ONSHORE FUND II, L.P.; RICHARD DIETZ; JEFFREY JOHNSON; and ASHOK RAJU,<br><br>      Respondents. | Case No. 1:20-MC-00209-PAE |

**MEMORANDUM OF LAW IN SUPPORT OF RESPONDENTS' MOTION TO (I) VACATE ORDER APPROVING DISCOVERY IN AID OF FOREIGN PROCEEDINGS, (II) QUASH SUBPOENAS, AND (III) STAY DISCOVERY**

                KOBRE & KIM LLP

                800 Third Avenue
                New York, New York 10022
                Tel: +1 212 488 1200
                Fax: +1 212 488 1220

                *Counsel for Respondents VR*
                *Advisory Services Ltd. et al*

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES .................................................................................................... ii

PRELIMINARY STATEMENT ............................................................................................. 1

BACKGROUND ..................................................................................................................... 2

LEGAL STANDARD .............................................................................................................. 5

ARGUMENT ........................................................................................................................... 7

    I.    THE EXISTENCE OF ESTABLISHED DIPLOMATIC CHANNELS DICTATE AGAINST SECTION 1782 DISCOVERY. ......................................... 7

    II.    THE DISCOVERY NIGERIA SEEKS IS NOT "FOR USE" IN A FOREIGN PROCEEDING. ..................................................................................... 11

    III.    DISCOVERY SHOULD BE STAYED WHILE THIS MOTION IS PENDING. ................................................................................................................. 14

CONCLUSION ...................................................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**   **Page(s)**

*Euromepa S.A. v. R. Esmerian, Inc.,*
  51 F.3d 1095 (2d Cir. 1995) .................................................................................. 13

*Glock v. Glock, Inc.,*
  797 F.3d 1002 (11th Cir. 2015) .............................................................................. 13

*In re Accent Delight International Ltd.,*
  869 F.3d 121 (2d Cir. 2017) ................................................................................... 13

*In re Application of Ekpenyong Ntekim,*
  1:13-mc-00038-TSE-IDD (E.D. Va. Dec. 18, 2013) ................................................ 9

*In re Asia Maritime Pacific Ltd.,*
  253 F. Supp. 3d 701 (S.D.N.Y. 2015) ...................................................................... 5

*In re Erato,*
  2 F.3d 11 (2d Cir. 1993) ........................................................................................... 9

*In re Ex Parte Shagang Shipping Co., Ltd.,*
  No. 14 Misc. 53-P1 (RWS), 2014 WL 1744264 (S.D.N.Y. Apr. 28, 2014) ............. 7

*In re Letter of Request from Crown Prosecution Service of United Kingdom,*
  870 F.2d 686 (D.C. Cir. 1989) ................................................................................. 9

*In re Letter of Request from Supreme Court of Hong Kong,*
  138 F.R.D. 27 (S.D.N.Y. 1991) ................................................................................ 9

*In re MT Baltic Soul Produktentankschiff-Ahrtsgesellschaft mgH & Co. KG,*
  No. 15-misc-319 (LTS), 2015 WL 5824505 (S.D.N.Y. Oct. 6, 2015) ................... 12

*In re Optimal Investment Services, S.A.,*
  773 F.3d 456 (2d Cir. 2014) ................................................................................... 10

*In re Postalis,*
  No. 18-mc-497 (JGK), 2018 WL 6725406 (S.D.N.Y. Dec. 20, 2018) ................... 13

*Intel Corp. v. Advanced Micro Devices, Inc.,*
  542 U.S. 241 (2004) ................................................................................. 5, 6, 8, 9, 13

*Kiobel by Samkalden v. Cravath, Swaine & Moore LLP,*
  895 F.3d 238 (2d Cir. 2018) ............................................................................ 6, 9, 13

*Mees v. Buiter*,
    793 F.3d 291 (2d Cir. 2015) ............................................................................................ 6, 12

*Pirri v. Cheek*,
    No. 19. Civ. 180 (PAE), 2020 WL 2520593 (S.D.N.Y. May 18, 2020) ................................. 14

*Process and Industrial Developments Limited v. Federal Republic of Nigeria*,
    --- F.3d ---, 2020 WL 3393452 (D.C. Cir. June 19, 2020). .................................................... 3

*Young v. United States Department of Justice*,
    No. 87 CIV. 8307 (JFK), 1988 WL 131302 (S.D.N.Y. Nov. 28, 1988) ................................ 8, 9

**Statutes**

18 U.S.C. § 3512 .................................................................................................................... 8

28 U.S.C. § 1782 ............................................................................................. 1, 5, 6, 7, 9, 12, 13

**Rules**

Federal Rule of Civil Procedure 45. ........................................................................................ 5, 7

**Treaties**

*Treaty between the Government of the United States of America and the Federal Republic of Nigeria on Mutual Legal Assistance in Criminal Matters*, Art. I, §1, Sept. 13, 1989, T.I.A.S. No. 03-114. ............................................................................................................ 7, 8, 11

**Foreign Cases**

*Process & Industrial Developments Ltd v Federal Republic of Nigeria*,
    [2019] EWHC 2241 (Comm), 2019 WL 03848529. ............................................................. 2, 3

**Other Authorities**

John Alechenu, *Malami's memo exposed corruption in Buhari's regime -PDP*, Punch (June 19, 2020), https://punchng.com/malamis-memo-exposed-corruption-in-buharis-regime-pdp/ 11

Letter from Sen. Charles E. Grassley, Chairman, S. Comm. on Finance, to Deborah Connor, Chief, Money Laundering and Asset Recovery Section of the U.S. Dep't of Justice (April 1, 2020), https://www.grassley.senate.gov/sites/default/files/2020-04-01%20CEG%20to%20DOJ%20%28Abacha%29.pdf ............................................................... 10, 11

U.S. Dep't of State, Bureau of Democracy, Human Rights & Labor, 2019 Country Report on Human Rights Practices: Nigeria (March 11, 2020), https://www.state.gov/reports/2019-country-reports-on-human-rights-practices/nigeria/ .......... 11

VR Advisory Services Ltd., VR Advisory Services (USA) LLC, VR Global Onshore Fund, L.P., VR Argentina Recovery Onshore Fund II, L.P., Jeffrey Johnson, and Ashok Raju (together, the "Respondents") hereby submit this memorandum of law in support of their motion to (i) vacate the order (ECF 10) (the "Order") granting the application by the Federal Republic of Nigeria and Attorney General Abubakar Malami (together, "Nigeria") under 28 U.S.C. § 1782 ("Section 1782") to take discovery in aid of foreign proceedings ("Application"); (ii) quash the subpoenas served on the Respondents; and (iii) stay discovery pending resolution of these issues ("Motion").

## PRELIMINARY STATEMENT

Nigeria has a bilateral treaty with the United States dictating that the United States "shall, upon request and in accordance with the provisions of this Treaty, provide mutual assistance in connection with the investigation, prosecution, and prevention of crimes, and in proceedings related to criminal matters." Nigeria, however, has circumvented the procedures required under this mutual legal assistance treaty by appearing directly in this Court. In doing so, Nigeria is carrying on its purported law enforcement activities within the United States while cutting the Executive Branch, specifically the United States Department of Justice ("DOJ"), out of its important gatekeeping role under the treaty. In cases such as this one—where Nigeria is using its law enforcement apparatus to target an adversary in a commercial dispute in ways that raise serious due process concerns—this gatekeeping role is all the more essential. Nigeria has failed to demonstrate that the treaty process is unavailable to it, or inadequate here, such that the Court should permit discovery under Section 1782 in its discretion.

Not only does the Application circumvent established, diplomatic means of evidence-gathering, Nigeria also fails to establish that it seeks evidence "for use" in foreign proceedings, as required by Section 1782. Nigeria refers only to unspecified "criminal investigations and judicial

1

proceedings pending in" Nigeria that pertain to unspecified "target individuals and entities." These vague descriptions fail to show that discovery will aid in the asserted foreign investigations or proceedings.

On the contrary, there are good reasons to believe that Nigeria actually is seeking the evidence for use in other, undisclosed foreign civil proceedings or merely to publicly attack Respondents for being associated with Process & Industrial Developments ("P&ID"), an adversary to whom Nigeria owes a multi-billion dollar debt as the result of a commercial dispute. Indeed, Nigeria recently used discovery obtained through another Section 1782 application in this district as evidence in proceedings in England, notwithstanding the fact that Nigeria told Judge Schofield that it sought discovery for use in criminal investigations and prosecutions in Nigeria and dismissed as "rank speculation" P&ID's suggestion that Nigeria planned to use the discovery in the English proceedings. Nigeria, moreover, claims that it is investigating an alleged scheme concerning its agreement with P&ID from 2010; yet, in the Application Nigeria is seeking discovery from Respondents who, as Nigeria well knows, did not acquire a stake in P&ID until 2017.

Accordingly, the Order granting the Application should be vacated and the subpoenas served pursuant to the Order should be quashed. In the meantime, the Court should stay discovery pending resolution of this Motion.

## BACKGROUND[1]

Nigeria's dispute with P&ID arises from a commercial agreement that the country's petroleum ministry entered into with P&ID a decade ago. *See Process & Industrial Developments*

---

[1] This background is submitted for context as the issues bearing on the Motion are legal in nature and are drawn principally from Nigeria's Application.

*Ltd v Federal Republic of Nigeria* [2019] EWHC 2241 (Comm), 2019 WL 03848529, *available at* Stafford Decl., Ex. 1 at 2 (hereinafter, the "English Judgment"). The agreement provided that P&ID would process large amounts of wet gas over a 20-year period so that the gas—a byproduct of crude oil production that otherwise would have been burned off—could be used to generate much-needed electricity for Nigerians. *Id.* When Nigeria failed to perform under the agreement, P&ID commenced arbitration in London in 2012. *Id.* at 3.

A tribunal of arbitrators—comprising a former judge on the United Kingdom's then-highest court (the House of Lords), a former judge on England and Wales' Court of Appeal, and a former Attorney General of Nigeria—unanimously concluded in 2015 that Nigeria had repudiated the agreement and that P&ID was entitled to compensation. *Id.* at 4. In 2017, the tribunal determined that P&ID was entitled to US $6.6 billion plus interest, reflecting the profit P&ID would have earned over the 20-year supply term if Nigeria had performed. *Id.* at 10.

In March 2018, P&ID commenced proceedings to enforce the award in the Commercial Court for England and Wales ("English Court") and in the United States District Court for the District of Columbia ("D.C. Court"). *See id.*; *Process and Industrial Developments Limited v. Federal Republic of Nigeria*, Case No. 18-cv-594 (CRC) (D.D.C.). In the D.C. Court, Nigeria has asserted that it is immune from jurisdiction and cannot be subject to any of the burdens of litigation before that claim of immunity is resolved. *See Process and Industrial Developments Limited v. Federal Republic of Nigeria*, --- F.3d ---, 2020 WL 3393452, at *1 (D.C. Cir. June 19, 2020).

Proceedings in the English Court have proceeded apace, and P&ID's enforcement efforts there pose a far more imminent threat to Nigeria. In August 2019, Mr. Justice Butcher of the English Court concluded that P&ID could enforce the award in the same manner as an English court judgment. *See English Judgment* at 28. Enforcement in the UK has been stayed pending

Nigeria's appeal, but Nigeria was first required to provide security in the amount of US $200 million. *See* Stafford Decl., Ex. 2 (Order of Mr. Justice Butcher of 26 September 2019).

Only *after* the English Court announced its decision enforcing the arbitral award did Nigeria publicly announce a criminal investigation into P&ID and others for a scheme that allegedly occurred nearly a decade earlier. Stafford Decl. ¶8 (quoting Third Witness Statement of Seamus Andrew). And, while Nigeria misleadingly asserts in the Application that P&ID "plead[ed] guilty" to criminal charges in Nigeria (*see* ECF 3 at 12), Nigeria omits that P&ID, which is registered in the British Virgin Islands, has asserted to the English Court through sworn testimony that it was never served with or otherwise given notice of the Nigerian proceedings against it. Stafford Decl. ¶8 (quoting Third Witness Statement of Seamus Andrew). On September 19, 2019, just days after it was charged, and after a hearing which appears to have lasted less than a day, a Nigerian Court found P&ID guilty of various offenses. *Id.* Worse yet, the purported guilty plea of P&ID was entered by a former employee of P&ID's Nigerian **affiliate** who was neither a director nor shareholder of P&ID. *Id.*

Hence, P&ID is presenting to the English Court that the purported foreign criminal investigations and proceedings that form the basis for the Application are in fact a sham by Nigeria to avoid the multi-billion dollar commercial debt owed by Nigeria to P&ID.

Nigeria, in the meantime, has now resorted to submitting evidence from another, recent Section 1782 application in this district[2] to the English Court, even though that application, like this one, was purportedly made only to seek discovery in aid of Nigerian criminal proceedings. Rosenbaum Decl., Ex. 3 at 2 (Nigeria's Reply Brief, Judge Schofield Section 1782 Application,

---

[2] *In re Ex Parte Application of the Federal Republic of Nigeria and Abubakar Malami, the Attorney General of the Federal Republic of Nigeria*, 1:20-MC-00169-LGS (S.D.N.Y.) (hereinafter "Judge Schofield Section 1782 Application").

ECF 17 (Nigeria discussing predicate foreign proceedings as the "Nigerian Proceedings, including [] prosecuting those persons in Nigeria who have engaged in corruption")); Rosenbaum Decl., Ex. 4 (Endorsed Letter Motion, Judge Schofield Section 1782 Application, ECF 20 (P&ID seeking protective order based on Nigeria's use of discovery in English Court)).

This Court entered the Order granting Nigeria's application *ex parte* to take discovery under Section 1782 on May 14, 2020. ECF 10. The parties agreed, by email confirmation from Nigeria's counsel on June 9, 2020, that the six Respondents would accept service of the subpoenas seeking documents and testimony, and to a deadline of June 26, 2020 for Respondents' written responses and objections pursuant to Federal Rule of Civil Procedure 45(d)(2)(B). Rosenbaum Decl., Ex. 1. Each subpoena contains 56 separate categories of document requests. *See* Rosenbaum Decl., Ex. 2 (subpoenas). Respondents filed a pre-motion letter on June 22, 2020 indicating their intention to move to vacate the Order and quash the subpoenas. ECF 12. The Court, on June 23, 2020, denied the request for a pre-motion conference and instructed that the Court would set a briefing schedule after Respondents submit their motion. ECF 13.

## LEGAL STANDARD

To obtain relief under Section 1782, an applicant must meet three statutory requirements, otherwise the application fails: (i) the person from whom discovery is sought resides or is found within the District; (ii) the discovery is "for use" in a proceeding before a foreign or international tribunal; and (iii) the applicant is an interested person under the statute. 28 U.S.C. § 1782(a).

Even if the threshold statutory requirements are met, the Supreme Court has made clear that "a district court is not required to grant a § 1782(a) discovery application simply because it has the authority to do so." *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264 (2004) (emphasis added); *see also In re Asia Mar. Pac. Ltd.*, 253 F. Supp. 3d 701, 705 (S.D.N.Y. 2015)

5

(holding that even if all statutory requirements of Section 1782 were established, the court "would exercise its discretion to deny the petition because this is an overly broad fishing expedition that does nothing to further the twin aims of the statute").

Instead, the Court must exercise its discretion, taking into account the four discretionary factors articulated in *Intel*. 542 U.S. at 264-65 ((i) whether "the person from whom discovery is sought is a participant in the foreign proceeding"; (ii) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (iii) whether the application "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (iv) whether the discovery sought is "unduly intrusive or burdensome").

As the Second Circuit has explained, however, the "*Intel* factors are not to be applied mechanically," and the Court "should also take into account any other pertinent issues arising from the facts of the particular dispute." *Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 245 (2d Cir. 2018). Courts may also "deny the [Section 1782] application *in toto*" where it "is made in bad faith, for the purpose of harassment, or unreasonably seeks cumulative or irrelevant materials." *Mees v. Buiter*, 793 F.3d 291, 302 n.18 (2d Cir. 2015) (internal quotation marks omitted).

When a Section 1782 application is granted *ex parte*, as the Court did here, the subpoena respondent can seek relief by motion to vacate the order and quash the subpoenas. *See, e.g.*, *In re*

(holding that even if all statutory requirements of Section 1782 were established, the court "would exercise its discretion to deny the petition because this is an overly broad fishing expedition that does nothing to further the twin aims of the statute").

Instead, the Court must exercise its discretion, taking into account the four discretionary factors articulated in *Intel*. 542 U.S. at 264-65 ((i) whether "the person from whom discovery is sought is a participant in the foreign proceeding"; (ii) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance"; (iii) whether the application "conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and (iv) whether the discovery sought is "unduly intrusive or burdensome").

As the Second Circuit has explained, however, the "*Intel* factors are not to be applied mechanically," and the Court "should also take into account any other pertinent issues arising from the facts of the particular dispute." *Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 245 (2d Cir. 2018). Courts may also "deny the [Section 1782] application *in toto*" where it "is made in bad faith, for the purpose of harassment, or unreasonably seeks cumulative or irrelevant materials." *Mees v. Buiter*, 793 F.3d 291, 302 n.18 (2d Cir. 2015) (internal quotation marks omitted).

When a Section 1782 application is granted *ex parte*, as the Court did here, the subpoena respondent can seek relief by motion to vacate the order and quash the subpoenas. *See, e.g.*, *In re*

*Ex Parte Shagang Shipping Co., Ltd.,* No. 14 Misc. 53-P1 (RWS), 2014 WL 1744264, at *1 (S.D.N.Y. Apr. 28, 2014) (granting motion to vacate order and quash subpoena).[3]

## ARGUMENT

**I. THE EXISTENCE OF ESTABLISHED DIPLOMATIC CHANNELS DICTATES AGAINST SECTION 1782 DISCOVERY.**

Nigeria's Section 1782 application seeks discovery purportedly in aid of criminal investigations and proceedings in Nigeria, but Nigeria has a well-established path to obtain such evidence, which this application circumvents. If the statutory elements are met, discovery under Section 1782 is a matter of discretion, and Respondents submit that in exercising its discretion the Court should consider the treaty Nigeria has in place with the United States that allows Nigeria to seek legal assistance in criminal matters. Specifically, Nigeria may do so by making a request to the DOJ. *See Treaty between the Government of the United States of America and the Federal Republic of Nigeria on Mutual Legal Assistance in Criminal Matters*, Art. I, §1, Sept. 13, 1989, T.I.A.S. No. 03-114.1 (the "MLAT").

The MLAT states that the parties "shall, ***upon request and in accordance with the provisions of this Treaty***, provide mutual assistance in connection with the investigation, prosecution, and prevention of crimes, and in proceedings related to criminal matters." MLAT, Art. I, §1 (emphasis added). Under the MLAT, the United States and Nigeria each "designate a Central Authority to make and receive requests pursuant to this Treaty," which are the attorney

---

[3] As set forth above, Respondents have served written responses and objections to the subpoenas pursuant to Federal Rule of Civil Procedure 45(d)(2)(B). Respondents' intention thereby is, concurrent with and in addition to the threshold arguments made in this Motion, to assert and preserve all of their responses and objections to the subpoenas—including, by way of illustration not limitation, on grounds of scope, relevance, privilege, date-range, burden, ambiguity, and availability from other means—to the fullest extent allowable by law.

generals of the respective countries or their designees and who "shall communicate directly with each other for the purposes of this Treaty." MLAT, Art. II, §§1-3.

To make a request under the MLAT, Nigeria must provide, among other information, "the subject matter and nature of the investigation, prosecution, or proceeding, including the specific crimes which relate to the matter, the stage reached in the proceedings, and any dates for further proceedings." MLAT, Art. IV, §2(b). Such requests may be denied if, for example, the request lacks the requisite information or if it would be "contrary to the Constitution." MLAT, Art. III, §1(d). Further, under the MLAT, if the request is granted, the DOJ—***not the foreign state***—is to ask a district court to issue the subpoenas. MLAT, Art. V, §1. *See, e.g.*, *Young v. U.S. Dep't. of Justice*, No. 87 CIV. 8307 (JFK), 1988 WL 131302, at *7 (S.D.N.Y. Nov. 28, 1988) (request sent from Bermuda's attorney general to U.S. Department of Justice); *see also* 18 U.S.C. § 3512 (authorizing federal courts to issue orders to execute requests from a foreign authority "[u]pon application, duly authorized by an appropriate official of the Department of Justice").

Nigeria has neither addressed nor shown this Court why it could not have made its requests for information through this MLAT process, as is the ordinary course when seeking information for a *bona fide* criminal investigation. Given Nigeria's circumvention of the MLAT without justification, it is appropriate for this Court to deny Section 1782 discovery in its discretion. *See Intel*, 542 U.S. at 244-45, 265 (a Section 1782 application that "conceals an attempt ***to circumvent*** foreign proof-gathering restrictions or other policies of a foreign country ***or the United States***," weighs against discovery) (emphasis added).

Indeed, when several years ago a Nigerian prosecutor similarly pursued Section 1782 discovery—also without having followed the MLAT procedure—a district court in Virginia denied the application on that basis. *In re Application of Ekpenyong Ntekim*, 1:13-mc-00038-TSE-IDD

(E.D. Va. Dec. 18, 2013) (ECF 11), *available on this docket at* ECF 12-1. The court reasoned that a Section 1782 application made directly by a foreign prosecutor to a federal court "circumvent[s] the procedure that the Government of the United States and the Government of the Federal Republic of Nigeria have established to facilitate precisely this type of request," namely the MLAT. *Id*. at 2. The court added that the "request should properly be handled by the United States executive branch through diplomatic means." *Id.* at 2-3.

The availability of discovery through other means is itself a basis for denying discovery under Section 1782. *See Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 245 (2d Cir. 2018) (noting that availability of evidence from a party to the foreign proceeding weighs against discovery under first *Intel* factor). Similarly, here, discovery under Section 1782 is not necessary and the Order should be vacated because Nigeria can properly seek assistance through the MLAT.

Nigeria's Application is, indeed, predicated on cases standing for the proposition that **DOJ** may invoke Section 1782 to obtain discovery in aid of a foreign criminal proceedings **on behalf of** foreign prosecutors. ECF 3 at 17 (citing *Young*, 1988 WL 131302, at *7). That is precisely how the process available to Nigeria operates, and how such requests should be made. *See, e.g.*, *In re Erato*, 2 F.3d 11, 12-13 (2d Cir. 1993) (discovery under Section 1782 sought on behalf of Dutch prosecutors upon application of "Assistant United States Attorney" pursuant to U.S.-Netherlands MLAT); *In re Letter of Request from Supr. Ct. of H.K.*, 138 F.R.D. 27, 29 (S.D.N.Y. 1991) (discovery under Section 1782 sought on behalf of Hong Kong prosecutors upon application of "Assistant United States Attorney" pursuant to letters of request); *see also In re Letter of Request from Crown Prosecution Serv. of U.K.*, 870 F.2d 686, 688 (D.C. Cir. 1989) (Ginsburg, J.) (discovery under Section 1782 permitted on behalf of British prosecutors upon application of "U.S.

Attorney's Office for the District of Columbia").[4] Thus, while the law does not expressly prohibit a foreign prosecutor's access to the United States district courts, Nigeria's circumvention of the MLAT process here weighs against granting discovery under Section 1782 in the exercise of the Court's discretion.

To illustrate, if Nigeria applied directly to this Court for discovery under Section 1782 ***because*** it expected the MLAT request would be ***denied by DOJ***, that would further support vacating the Order. This is a distinct possibility here, where Nigeria could be loath to place its criminal investigations and proceedings—which are being challenged before the English Court as being politically motivated and rife with due process violations—under the scrutiny of DOJ's MLAT review process. In fact, more broadly, in April of this year, United States Senator Charles Grassley, Chairman of the Senate's Finance Committee, wrote to Deborah Connor, Chief of the DOJ's Money Laundering and Asset Recovery Section, that Nigeria's Economic and Financial Crimes Commission ("EFCC")—which has been carrying out the supposed investigation of P&ID and its associates—has "been involved in the detention of innocent individuals and withheld critical medical care and legal representation all in violation of the Nigerian Constitution."[5] Senator Grassley continued, stating that Nigeria has persecuted and the EFCC has detained "individuals who have spoken against" the government, and raised the question whether Nigeria's Attorney General (one of the Applicants here) and the EFCC's acting chairman should be

---

[4] Nigeria also relies on *In re Optimal Investment Services, S.A.*, 773 F.3d 456, 458 (2d Cir. 2014), which is inapposite. While the Second Circuit did hold that evidence sought to aid a Swiss investigating magistrate was for use before a foreign tribunal, the applicant in that case was "a Swiss criminal complainant," not a foreign government prosecutor. *Id.* at 457.

[5] Letter from Sen. Charles E. Grassley, Chairman, S. Comm. on Finance, to Deborah Connor, Chief, Money Laundering and Asset Recovery Section of the U.S. Dep't of Justice at 2 (April 1, 2020), https://www.grassley.senate.gov/sites/default/files/2020-04-01%20CEG%20to%20DOJ%20%28Abacha%29.pdf.

sanctioned under "the Global Magnitsky Act or the Frank R. Wolf International Religious Freedom Act." *Id.* at 3.[6]  Nigeria's Attorney General, Applicant Malami, has recently come under significant public criticism that the "anti-corruption fight of [Nigeria's] Buhari administration, has been nothing but a huge fraud and a racket by certain persons in the APC administration to harass political opponents, intimidate and extort money from innocent Nigerians and steal public funds."[7]

The MLAT process provides safeguards to ensure that, when a foreign prosecutor enters the United States, its investigation comports with due process under the United States Constitution. *See* MLAT, Art. III, §1(d).  Those safeguards are undone where, as here, a foreign prosecutor appears directly in a United States district court under the auspices of its law enforcement authority using the permissive conventions of United States civil discovery.

Nigeria has no credible justification for its circumvention of proper MLAT procedure.  The Court should therefore exercise its discretion to vacate the Order and quash the subpoenas in their entirety because the Application circumvents the DOJ's proof-gathering apparatus that is available to Nigeria.

## II. THE DISCOVERY NIGERIA SEEKS IS NOT "FOR USE" IN A FOREIGN PROCEEDING.

In its Section 1782 application, Nigeria defined the "Nigeria Proceedings" as "criminal investigations and judicial proceedings pending in" Nigeria (ECF 3 at 5), but it does not actually

---

[6] Similarly, as the United States State Department stated in 2019: "Prisoners and detainees [in Nigeria] were reportedly subjected to torture, gross overcrowding, food and water shortages, inadequate medical treatment, deliberate and incidental exposure to heat and sun, and infrastructure deficiencies that led to wholly inadequate sanitary conditions that could result in death." U.S. Dep't of State, Bureau of Democracy, Human Rights & Labor, 2019 Country Report on Human Rights Practices: Nigeria at 8 (March 11, 2020), https://www.state.gov/reports/2019-country-reports-on-human-rights-practices/nigeria/.

[7] John Alechenu, *Malami's memo exposed corruption in Buhari's regime -PDP*, Punch (June 19, 2020), https://punchng.com/malamis-memo-exposed-corruption-in-buharis-regime-pdp/ (quoting National Publicity Secretary of the PDP, an opposition party).

identify the pending (or even contemplated) proceedings. An application that fails to specify the foreign proceedings fails under Section 1782. *See In re MT Baltic Soul Produktentankschiff-Ahrtsgesellschaft mgH & Co. KG*, No. 15-misc-319 (LTS), 2015 WL 5824505, at *2 (S.D.N.Y. Oct. 6, 2015) (without a "concrete basis here for a determination that the discovery is actually being sought in aid of a contemplated foreign adjudicative proceeding," the application does not meet the statutory requirements of Section 1782).

Because the foreign proceeding is insufficiently defined, Nigeria has not established the statutory "for use" requirement under Section 1782. Rather, the breadth of Nigeria's discovery requests—and the fact that Nigeria seeks documents completely unrelated to its criminal investigation, such as "[a]ll documents and communications concerning the enforcement of any award granted in the Arbitration" between P&ID and Nigeria (*see* Rosenbaum Decl., Ex. 2 (Request #3))—suggests that Nigeria's actual goal is to seek discovery for other purposes and proceedings against P&ID that Nigeria has not disclosed in its Application.

In fact, Nigeria has ***already used*** evidence obtained pursuant to another Section 1782 application in this district in the English Court proceedings where Nigeria is seeking to set aside P&ID's arbitration award. Rosenbaum Decl., Ex. 4 (Endorsed Letter Motion, Judge Schofield Section 1782 Application, ECF 20). Nigeria used this evidence despite having failed to disclose the English Court proceedings in its Section 1782 application, and despite telling Judge Schofield that P&ID's contention that the evidence would be used in those proceedings was "rank speculation." Rosenbaum Decl., Ex. 3 at 4 (Nigeria's Reply Brief, Judge Schofield Section 1782 Application, ECF 17); *see also Mees*, 793 F.3d at 299 n.10 (2d Cir. 2015) ("[a] request that appears only marginally relevant to the foreign proceeding may in certain cases suggest that the application 'is made in bad faith, for the purpose of harassment, or unreasonably seeks cumulative or irrelevant

materials,'…which would be grounds for a discretionary denial of discovery" (quoting *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1101 n.6 (2d Cir. 1995)).

When one foreign litigation is used "as a ruse for obtaining discovery for use in other foreign proceedings," parties "can and should bring evidence of such chicanery to the [Section] 1782 court's attention." *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 135 (2d Cir. 2017) (quoting *Glock v. Glock, Inc.*, 797 F.3d 1002, 1009 (11th Cir. 2015)). This evidence "might support denying the Section 1782 application altogether" given that it may be evidence of circumvention. *Id.* (citing *Intel*, 542 U.S. at 265).[8] In any event, Nigeria's stated rationale for discovery—that Respondents "must be in possession of key information and relevant documents concerning the business operations and finances of P&ID and its affiliates," ECF 3 at 19—underscores that the real party "from whom discovery is sought" is P&ID, who is a party to three proceedings involving Nigeria. *See Kiobel by Samkalden*, 895 F.3d at 245.[9]

Accordingly, Nigeria has not satisfied the "for use" requirement of Section 1782.

---

[8] Nigeria is also litigating against P&ID in ***domestic*** proceedings. As discussed above, P&ID petitioned the D.C. Court to enforce the arbitration award. Despite Nigeria's eagerness to use the U.S. courts for its own ends by filing two Section 1782 applications (including this one), Nigeria is seeking dismissal of P&ID's enforcement action based on an assertion of sovereign immunity. *See In re Postalis*, No. 18-mc-497 (JGK), 2018 WL 6725406 (S.D.N.Y. Dec. 20, 2018) (denying Section 1782 application on grounds that discovery was sought for use in contemplated U.S. litigation).

[9] Nigeria's suggestion that these documents cannot be obtained from P&ID on the basis of alleged document destruction years ago is at best highly misleading, particularly since P&ID's counsel already addressed these allegations in a letter to Nigeria's UK counsel, which explanation was omitted from Nigeria's *ex parte* application. Stafford Decl., Ex. 4. In any event, Respondent's discussions regarding an investment in P&ID only began in 2017, which is ***after*** the alleged document destruction discussed in the 2016 email. *See* ECF 4-10 (e-mail). Respondents have thus served objections to the discovery requests on this, among other, grounds. *See* Rosenbaum Decl. ¶5.

13

**III.     DISCOVERY SHOULD BE STAYED WHILE THIS MOTION IS PENDING.**

As set forth above, Respondents have strong, threshold bases to vacate the Order and quash the subpoenas in their entirety. Consequently, given that Nigeria has served 56 sweeping categories of document requests on Respondents and apparently will seek as many as five depositions, Respondents request a stay of discovery pending the outcome of this motion. *See, e.g.*, *Pirri v. Cheek*, No. 19. Civ. 180 (PAE), 2020 WL 2520593, at *3 (S.D.N.Y. May 18, 2020) (Engelmayer, J.) (explaining that "Court stayed execution of the subpoena and called for an opposition" after subpoena recipient filed motion to quash). A stay of discovery is particularly appropriate here, where Respondents have served written responses and objections to the document requests under Rule 45(d)(2)(B), and where deposition dates have not yet been discussed or scheduled. *See* Rosenbaum Decl. ¶6.

## CONCLUSION

For the foregoing reasons, the Court should (i) vacate the Order, (ii) quash the subpoenas, and (iii) stay discovery pending resolution of this Motion.

Dated:      New York, New York
                June 26, 2020

                                                  Respectfully submitted,

                                                  **KOBRE & KIM LLP**

                                                    /s/ Zachary D. Rosenbaum
                                                  Michael S. Kim
                                                  michael.kim@kobrekim.com
                                                  Zachary D. Rosenbaum
                                                  zachary.rosenbaum@kobrekim.com
                                                  Josef M. Klazen
                                                  josef.klazen@kobrekim.com
                                                  Darryl G. Stein
                                                  darryl.stein@kobrekim.com

Kobre & Kim LLP
800 Third Avenue
New York, New York 10022
Telephone: +1 212 488 1200

*Attorneys for VR Advisory Services Ltd., VR Advisory Services (USA) LLC, VR Global Onshore Fund, L.P., VR Argentina Recovery Onshore Fund II, L.P., Jeffrey Johnson, and Ashok Raju.*