UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE FEDERAL REPUBLIC OF NIGERIA; ABUBAKAR MALAMI, THE ATTORNEY GENERAL OF THE FEDERAL REPUBLIC OF NIGERIA<br><br><br><br>Applicants<br><br><br>VR ADVISORY SERVICES, LTD.; VR ADVISORY SERVICES (USA) LLC; VR CAPITAL GROUP, LTD.; VR GLOBAL ONSHORE FUND, L.P.; VR ARGENTINA RECOVERY ONSHORE FUND II, L.P.; RICHARD DIETZ; JEFFREY JOHNSON; and ASHOK RAJU<br>Respondents. | Case No.: 1:20-mc-00209-PAE |

---

**APPLICANTS' MEMORANDUM OF LAW IN OPPOSITION TO RESPONDENTS' MOTION TO (I) VACATE ORDER APPROVING DISCOVERY IN AID OF FOREIGN PROCEEDINGS, (II) QUASH SUBPOENAS, AND (III) STAY DISCOVERY**

---

**MEISTER SEELIG & FEIN LLP**
125 Park Avenue, 7th Floor
New York, NY 10017
Tel: (212) 655-3500

*Attorneys for Applicants the Federal Republic of Nigeria and the Honorable Abubakar Malami, the Attorney General of the Federation and Minister of Justice of the Federal Republic of Nigeria*

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ........................................................................................................ ii

PRELIMINARY STATEMENT..................................................................................................... 1

RELEVANT FACTS ..................................................................................................................... 5

ARGUMENT ................................................................................................................................. 9

    I.     The Section 1782 Application Is Not A Circumvention of The Nigeria MLAT .......... 9

        A.  The Nigeria MLAT Provides No Private Right of Action to Respondents ............ 9

        B.  The Application is Consistent with the Nigeria MLAT ........................................ 11

    II.    Applicants Satisfy Section 1782's "For Use" Requirement ....................................... 18

        A.  The Section 1782 Discovery Applicants Seek Will Further Applicants' Criminal
           Investigations and Prosecutions ............................................................................ 19

        B.  Section 1782 Does Not Restrict the Use of Discovery Material........................... 21

    CONCLUSION ..................................................................................................................... 24

## <u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*Euromepa, S.A. v. R. Esmerian*, Inc.,
  51 F.3d 1095 (2d Cir. 1995) .................................................................16

*Gushlak v. Gushlak*,
  486 Fed.Appx. 215 (2d Cir. 2015) .........................................................16

*Gutierrez v. Fox*,
  141 F.3d 425 (2d Cir. 1998) ..................................................................11

*In re Accent Delight International Ltd.*,
  869 F.3d 121 (2d Cir. 2017) ............................................................ *Passim*

*In re Application of Chevron Corp.*,
  709 F.Supp.2d 283 (S.D.N.Y. 2010) .....................................................18

*In re Application of Ekpenyong Ntekim*,
  1:13-mc-00038-TSE-IDD (E.D. Va. Dec. 18, 2013) ...................13, 14, 18

*In re Application of Sveaas*,
  249 F.R.D. 96 (S.D.N.Y. 2008) .......................................................22, 23

*In re Ex Parte Application of Kleimar N.V.*,
  220 F.Supp.3d 517 (S.D.N.Y. 2016) .....................................................24

*In re Ex Parte Petition of the Republic of Turkey*,
  2020 WL 2539232 (D.N.J. May 18, 2020)........................................15, 17

*In re Gorsoan Limited*,
  435 F.Supp.3d 589 (S.D.N.Y. 2020) ............................19, 20, 21, 22

*In re Grand Jury Subpoena*,
  646 F.3d 159 (4th Circ. 2011) ...........................................................13, 14

*In re Grand Jury, John Doe No. G.J. 2005-2*,
  *478 F.3d 581* (4th Cir. 2007)..................................................................14

*In re IKB Deutsche Industriebank AG*,
2010 WL 1526070 (N.D. Ill. April 8, 2010) ............................................................... 15

*In re Microsoft*,
855 F.3d 53 (2d Cir. 2017) ................................................................................................ 3

*In re Postalis*,
2018 WL 6725406 (S.D.N.Y. 2018) .............................................................................. 24

*In re Premises Located at 840 140th Ave. NE, Bellevue, Wash.*,
634 F.3d 557 (9th Cir. 2011) ....................................................................... 12, 13, 17

*In re Republic of Kazakhstan*,
110 F.Supp.3d 512 (S.D.N.Y. 2015) ..................................................... 12, 23, 24

*Intel Corp. v. Advanced Micro Devices, Inc.*,
542 U.S 241 (2004) ........................................................................................... 19, 21

*Kiobel by Smkalden v. Cravath Swaine & Moore LLP*,
895 F.3d 238 (2d Cir. 2018) ......................................................................................... 17

*Marubeni America Corp. v. LBA Y.K.*,
335 Fed. Appx 95 (2d Cir. 2009) ................................................................................. 24

*Mees v. Buiter*,
793 F.3d 291 (2d Cir. 2015) ...................................................................... 14, 19, 20, 21

*Mora v. New York*,
524 F.3d 183 (2d Cir. 2008) ......................................................................................... 10

*Oppenheimer Fund, Inc. v. Sanders*,
437 U.S. 340 (1978) ...................................................................................................... 23

*Republic of Ecuador v. Bjorkman*,
801 F.Supp.2d 1121 (D. Colo. 2011) ........................................................................... 15

*SEC v. Collector's Coffee, Inc.*,
2019 WL 8647777 (S.D.N.Y. June 19, 2019) .............................................................. 14

*U.S. v. Al Kassar*,
582 F.Supp.2d 488 (S.D.N.Y. 2008) ........................................................................... 11

*U.S. v. Davis*,
  767 F.2d 1025 (2d Cir. 1985) ............................................................................ 10, 11

*U.S. v. Little*,
  2014 WL 3604417 (S.D.N.Y. July 16, 2014) ............................................................ 11

*U.S. v. Rommy*,
  506 F.3d 108 (2d Cir. 2007) ............................................................................ *Passim*

**Statutes**

28 U.S.C. §1782 ............................................................................................ *Passim*

**Other Authorities**

*Treaty Between The Government Of The United States Of America And The Federal Republic of Nigeria On Mutual Legal Assistance In Criminal Matters*,
  T.I.A.S. No. 03-114 (Sept. 13, 2989) ......................................................................*passim*

*Treaty between the United States and Switzerland on Mutual Assistance in Criminal Matters*,
  27 U.S.T. 2019, T.I.A.S. No. 8302 (May 25, 1973) .................................................. 10

Applicants the Federal Republic of Nigeria ("FRN") and Attorney General Abubakar Malami ("AG Malami") (together "Applicants") respectfully submit this memorandum of law in opposition to Respondents'[1] June 26, 2020 "Motion to (I) Vacate Order Approving Discovery in Aid of Foreign Proceedings, (II) Quash Subpoenas, and (III) Stay Discovery" (ECF 20) (the "Motion"). The Court's May 14, 2020 order (the "Order") (ECF 10) granting Applicants' request pursuant to 28 U.S.C. §1782 ("Section 1782") to conduct discovery in this district for use in foreign proceedings (the "Application") (ECF 1) should stand, and the Court should lift the discovery stay and order Respondents to promptly comply with the subpoenas FRN served on June 9, 2020 (the "Subpoenas").

## PRELIMINARY STATEMENT

Respondents have raised two baseless arguments in their attempt to obstruct Applicants' ongoing investigations into the massive fraud perpetrated against FRN by Process & Industrial Developments Limited ("P&ID").

First, Respondents seek vacatur of the Court's Order by contending that the *Treaty Between The Government Of The United States Of America And The Federal Republic of Nigeria On Mutual Legal Assistance In Criminal Matters*, Sept. 13, 2989, T.I.A.S. No. 03-114 (the "Nigeria MLAT") prohibits FRN from obtaining discovery under Section 1782.[2] *See* Memorandum Of Law In Support Of Respondents' Motion To (I) Vacate Order Approving Discovery In Aid Of

---

[1] Respondents for purposes of this opposition include, VR Advisory Services, Ltd, VR Advisory Services (USA) LLC, VR Global Onshore Fund, LP., VR Argentina Recovery Onshore Fund II, L.P., Jeffrey Johnson, and Ashok Raju (collectively "Respondents").

[2] *See* Nigeria MLAT, https://www.state.gov/wp-content/uploads/2019/04/03-114.1-Nigeria-Law-Enforcmt-Mutual-Legal-Assistance.pdf.

Foreign Proceedings, (II) Quash Subpoenas, And (III) Stay Discovery ("VR MOL") (ECF 21) at p. 11.

The Court should reject Respondents' position that the Nigeria MLAT precludes Applicants from availing themselves of Section 1782.  Respondents have no standing to enforce the Nigeria MLAT against Applicants as that would be the province of the Department of Justice.[3] Regardless, the Nigeria MLAT contains no prohibition against FRN using other means of evidence gathering, including Section 1782.  To the contrary, Article XIX of the Nigeria MLAT expressly provides that the Nigeria MLAT "shall not prevent or restrict either of the Contracting Parties [*i.e.*, the United States or FRN] from granting any assistance under other applicable international conventions, arrangements, agreements, practices, or under the laws of the Contracting Parties."[4]

Moreover, nothing in Section 1782 excludes FRN from using the statute to obtain evidence. Indeed, Section 1782 expressly authorizes discovery in aid of foreign criminal investigations and prosecutions.  *See* 28 U.S.C. § 1782(a) ("The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal, including criminal investigations conducted before formal accusation").  Section 1782 explicitly contemplates multiple avenues for compiling evidence in the United States for use overseas.  *See* 28 U.S.C. § 1782(b) ("This chapter does not preclude a person within the United States from voluntarily giving his testimony or statement, or producing a document or other thing, for use in a proceeding in a foreign or international tribunal before any person and in any manner acceptable to him").

---

[3] *Id*. at Article I(4) ("The provisions of this Treaty shall not give rise to a right on the part of any private party to obtain, suppress, or exclude any evidence, or to impede the execution of a request").

[4] *Id*. at Article XIX. "Contracting Parties" is defined as the "Government of the United States of America and the Government of the Federal Republic of Nigeria."  *Id*. at Preamble.

If, as Respondents suggest, the Nigeria MLAT was meant to be FRN's exclusive means for obtaining information in the United States, the Nigeria MLAT would say so.  The "United States has entered into approximately 56 MLATs with foreign countries, including all member states of the European Union, and holds related Mutual Legal Assistance Agreements with others."  *In re Microsoft*, 855 F.3d 53, n. 8 (2d Cir. 2017) (concurring opinion).  Given the prevalence of MLATs, if they were meant to foreclose foreign governments from making direct Section 1782 applications for discovery in aid of foreign proceedings, surely the MLATs or Section 1782 would say so.  They do not.

Bilateral treaties like the Nigeria MLAT are intended to encourage the mutual exchange of discovery between sovereign nations and enlarge the methods treaty nations may use to conduct discovery in aid of a foreign proceeding.  Indeed, the United States has on several occasions engaged in lawful foreign discovery after a MLAT request was denied, or bypassed the MLAT process altogether, opting to use other discovery tools, such as grand jury subpoenas or wiretaps. In each instance, courts have upheld the use of alternate means of obtaining discovery as consistent with, and not in circumvention of, existing bilateral treaties.  Courts throughout the country have consistently rejected attempts to impose a restrictive application of MLAT treaties.  Respondents' heavy reliance on a single unpublished and poorly reasoned decision from a district court in the Eastern District of Virginia, a decision that is inconsistent with both the Fourth Circuit, where the Eastern District of Virginia sits, and the Second Circuit underscores the weakness of the Motion.

Second, Respondents assert that Applicants have not satisfied the "for use" in a foreign proceeding requirement in Section 1782.  Respondents, through their shell P&ID, took the exact opposite position in a previously filed application under Section 1782 before Judge Schofield in which Applicants obtained discovery from several banks, *In re Ex Parte Application of the Federal*

*Republic of Nigeria et al.*, Case No. 1:20-MC-00169-LGS (S.D.N.Y.) (the "Bank Application"), where P&ID conceded that Applicants satisfied the statutory requirements.  *See* Bank Application, 1: 20-mc-00169-LGS (ECF 13) at p. 1.  Applicants' investigations and criminal prosecutions were the foreign proceedings for which Applicants sought discovery in both the Bank Application and the instant Application.  Respondents' inconsistent positions cannot be reconciled.  To the extent Applicants receive discovery that is relevant to proceedings other than Applicants' investigations and criminal prosecutions, Section 1782 imposes no restrictions on Applicants' use of the discovery in separate proceedings, and as a matter of Second Circuit precedent Applicants are permitted to use discovery in other proceedings where Respondents attempt to perpetuate the fraud by attempting to enforce a sham arbitration award.

The investigations and criminal prosecutions clearly qualify as foreign proceedings within the meaning of Section 1782.  Moreover, the arbitral enforcement proceeding in London is a related and independently qualifying foreign proceeding.

Respondents' assertion that Applicants should seek discovery from P&ID in other foreign proceedings is no defense to the Application.  The Second Circuit has refused to imply a "quasi-exhaustion" requirement to Section 1782 applications.  Prior to commencing this Section 1782 proceeding, Applicants conducted two years of investigations into P&ID's fraud.  Section 1782 does not require Applicants to seek discovery from every other possible foreign tribunal prior to seeking Section 1782 discovery.

To the extent that Respondents take issue with the breadth or scope of individual document requests, Respondents should proceed in the normal course – meet and confer with Applicants, and if a dispute cannot be resolved, enlist the Court's intervention.  In an effort to obstruct FRN's investigations, Respondents skipped these steps and immediately filed the Motion requesting

extreme relief to vacate the Order and quash the duly served subpoenas.  The Court should deny the Motion and order that Respondents promptly comply with the Subpoenas authorized by this Court.

## RELEVANT FACTS

P&ID bribed corrupt FRN officials to procure a sham Gas Supply and Processing Agreement (the "GSPA"), which P&ID had no intention or ability to perform.  The FRN officials corrupted by P&ID's bribes were well-placed within the Ministry of Petroleum Resources of FRN (the "Petroleum Ministry"), and were able to rubber stamp P&ID's fictitious proposal and facilitate the execution of the GSPA.  P&ID did not perform under the GSPA.  Instead, P&ID engineered a breach claim against FRN, which was litigated in an arbitration in London (the "Arbitration.")

P&ID's bribes and false statements continued through the Arbitration, which, as a result, defrauded that tribunal.  On January 31, 2017, the panel of arbitrators presiding over the Arbitration issued a final award in favor of P&ID in the amount of $6.6 billion, which with interest P&ID now claims to be worth nearly $10 billion (the "Award").

The principals behind P&ID cashed out by selling P&ID to respondent VR Advisory Services Ltd. ("VR Advisory") (25%) and Lismore Capital Limited ("Lismore Capital") (75%). Respondents maintain VR Advisory's acquisition occurred in 2017, but VR Advisory has refused to provide any documentary proof of the timing.  As P&ID has no discernable assets or operations other than the Award, in purchasing P&ID, VR Advisory and Lismore Capital were really just purchasing the Award to earn a massive windfall for themselves while economically crippling FRN.  After all, "[t]he amount awarded to P&ID with interest is nearly five times FRN's 2019 budget for education, which was $2.07 billion, is more than eight times FRN's health budget for 2019, which was $1.2 billion, and is more than five times FRN's counterterrorism budget, which

was approximately $1.9 billion."  *See* Declaration of the Honorable Abubakar Malami, Attorney General of the Federal Republic of Nigeria ("AG Malami Declaration") (ECF 4) at ¶ 41.

In mid-2018, the Nigerian Economic and Financial Crimes Commission (the "EFCC") commenced FRN's investigation into the fraud.  By mid-2019, FRN began prosecutions against P&ID, its affiliates, individual agents of P&ID, and corrupt FRN officials who accepted the bribes. As set forth in the AG Malami Declaration, FRN obtained confessions and uncovered documentary proof of bribes paid by P&ID and its associates to former FRN officials.  *Id*. at ¶¶19, 21-32.

To aid FRN's ongoing investigations, Applicants filed the Application and the Bank Application in this District under Section 1782.  P&ID intervened in the Bank Application proceeding, represented by the same law firm representing Respondents, conceding "the Nigerian proceedings appear to facially satisfy the statutory requirements for a Section 1782 application." *See* Bank Application, 1: 20-mc-00169-LGS (ECF 13) at p. 1.  In terms of relief, P&ID asked for access to all document production and the right to attend depositions.  P&ID also asked that Applicants be restricted from using the discovery obtained in this District anywhere but in the criminal investigations and prosecutions in FRN.  *Id*., at p. 6.

Applicants opposed P&ID's requested use restriction,[5] because "Section 1782 does not prevent an applicant who lawfully has obtained discovery under the statute with respect to one foreign proceeding from using the discovery elsewhere."  *In re Accent Delight International Ltd.*, 869 F.3d 121, 135 (2d Cir. 2017).

 When it intervened in the Bank Proceeding P&ID referenced the Nigeria MLAT, but never contended it precluded Applicants from utilizing Section 1782.  Rather, P&ID conceded FRN met Section 1782's statutory requirements and did not oppose Applicants obtaining evidence gathering

---

[5] *See* Bank Application, 1:20-mc-00169-LGS (ECF 17) at pp. 4-5.

assistance pursuant to Section 1782.  *See* Bank Application, 1:20-mc-00169-LGS (ECF 13) at p. 1.   In acknowledging that Applicants could utilize Section 1782, P&ID merely noted the consequence of proceeding this way as opposed to under the Nigeria MLAT was that Applicants were now subject to the Federal Rules of Civil Procedure.  *Id*. at p. 6, n. 4.

Judge Schofield granted Applicants' Bank Application.  *Id*. (ECF 18).  Judge Schofield granted P&ID access to the materials produced by the banks to Applicants, but consistent with Second Circuit precedent did not impose any restriction on Applicants use of the discovery received pursuant to the Bank Application.  *Id*., at p. 4.

Through the Bank Application, Applicants have already uncovered additional evidence of P&ID's fraud.  For example, HSBC produced records of two payments to Enameg Vera Moses Taiga, the daughter of Grace Taiga.  Grace Taiga was the Legal Director at the Petroleum Ministry at the time of negotiation and conclusion of the GSPA.  Grace Taiga was responsible for oversight and compliance regarding the GSPA, and she was the FRN representative on the committee established by the Petroleum Ministry to negotiate the GSPA.  On December 30, 2009, while Grace Taiga was reviewing the final draft of the GSPA and just eleven days before the GSPA was executed, "Vera Taiga" was paid US$4,969.50 through Marshpearl Limited's Bank of Cyprus account.  Marshpearl was controlled by P&ID's co-founders, the late Michael Quinn and Brendan Cahill.  On January 31, 2012, another P&ID-related company, Kristholm Limited, also controlled by Quinn and Cahill, transferred US$5,000 to "Enameg Taiga."

As set forth in AG Malami's Declaration in the Bank Application proceeding, Seamus Andrew ("Andrew") was P&ID's lawyer in the Arbitration.  *See* Bank Application, 1:20-mc-00169-LGS (ECF 4) at ¶ 126.  Remarkably, he is also a principal in Lismore Capital, which owns seventy-five percent of the Award.  *Id*. at Exhibit 51 (ECF 4-51), p.2.  Two other transactions

produced by HSBC in the Bank Application proceeding are large wire transfers by Andrew of $20 million on August 7, 2018 and $19,578,109.03 on March 30, 2018 to Lismore Capital and VR Advisory, respectively.  *Id*. (ECF 22) at p. 2.  The transaction records for the $19,578,109.03 payment indicates that the payment was an "IPCO Settlement Distribution." *Id*.  The "IPCO arbitration," was found by the English Commercial Court to be *prima facie* fraudulent.[6]  P&ID's co-founders, Quinn and Cahill, were involved in the IPCO arbitration,[7] which also was a fraudulent scheme perpetrated against FRN's state-owned oil and gas company.  FRN maintains that these two transfers are relevant and important for its ongoing investigations and prosecutions.  While the full nature of the transactions is unknown to FRN, it is continuing to investigate and perhaps Respondents can explain the transactions when they are deposed.

Applicants seek in this proceeding discovery from Respondents, which made a large investment in the Award by purchasing a 25% interest in P&ID in order to own a piece of the Award.  It is inconceivable that the highly sophisticated Respondents would undertake such an investment without performing due diligence into the Award and how it was procured.  Moreover, Respondents maintain that VR Advisory invested in the Award in 2017.  P&ID's co-founder, Michael Quinn died in 2015.  Applicants have uncovered bribes paid to, for example, Grace Taiga, in 2017, 2018, and 2019.  Thus, Respondents are likely to have information relevant to Applicants' ongoing investigations and prosecutions.

---

[6] The English Courts' findings are recorded in the judgment of Field J at [2014] EWHC 576 (Comm) at [24] (where evidence of the alleged forgery, said to be only "the tip of the iceberg," is summarized), and [94], where the judge held that "NNPC have a good prima facie case that IPCO practiced a fraud on the Tribunal which undermines the validity of the whole Award" (see similarly [98] and [111]). This was affirmed by the Christopher Clarke LJ in the Court of Appeal at [2015] EWCA Civ 1144, [136].

[7] *See* Bank Application, 1:20-mc-00169-LGS (ECF 4-4) at p. 13.

Concerned about the evidence Applicants are uncovering pursuant to the Bank Application, P&ID and Respondents are seeking to obstruct Applicants' collection of evidence under Section 1782 by (a) seeking to claw back documents received by FRN pursuant to the Bank Application and (b) asking the Court to Vacate its Order in this proceeding.

## ARGUMENT

No grounds exist for the Court to vacate its Order.  The discovery sought by Applicants in aid of foreign proceedings under Section 1782 is appropriate and just.  Moreover, it is enlightening and relevant to foreign proceedings.  Therefore, the Court should not foreclose the uncovering of the truth but should, consistent with Section 1782, facilitate the truth-seeking role of litigation.

### I.      The Section 1782 Application Is Not A Circumvention of The Nigeria MLAT

The Court should reject Respondents' argument that Applicants must proceed via the Nigeria MLAT because Respondents lack standing to seek enforcement of the Nigeria MLAT, and, regardless, nothing in Section 1782 or the Nigeria MLAT requires Applicants to proceed pursuant to the Nigeria MLAT as opposed to Section 1782.  To the contrary, bilateral treaties such as the Nigeria MLAT are one of several non-exclusive means that a treaty nation may utilize to access discovery in aid of foreign proceedings.

### A.  The Nigeria MLAT Provides No Private Right of Action to Respondents

As the Second Circuit has held, "a proper respect for the diplomatic choices of sovereign nations prompts courts generally to apply 'a strong presumption against inferring individual rights from international treaties.'"  *U.S. v. Rommy*, 506 F.3d 108, 130 (2d Cir. 2007) (rejecting the defendant's claim that "evidence allegedly obtained in violation of the [MLAT] treaty should be excluded").  Article I(4) of the Nigeria MLAT provides that the treaty "is intended solely for the mutual legal assistance between the Parties [*i.e.* the United States and FRN].  The provisions of

this Treaty shall not give rise to a right on the part of any private person to obtain, suppress, or exclude any evidence, or to impede the execution of a request."[8]  Analyzing a similar provision in the MLAT between Switzerland and the United States, the Second Circuit held that a criminal defendant "ha[d] no standing to move to exclude or suppress [evidence] on the basis of a purported violation" of the Swiss-US MLAT.  *U.S. v. Davis*, 767 F.2d 1025, 1030 (2d Cir. 1985).[9]  "[A]bsent explicit treaty language conferring individual enforcements rights, [MLAT] treaty violations are generally addressed by the signatory sovereigns through diplomatic channels."  *Rommy*, 506 F.3d at 129.  Thus, Respondents have no standing to seek enforcement of the Nigeria MLAT.

Unsurprisingly, Respondents cannot direct the Court to any language in the Nigeria MLAT conferring on Respondents a private right of action to enforce or seek enforcement of the Nigeria MLAT.  *See Mora v. New York*, 524 F.3d 183, 202 (2d Cir. 2008) ("If contracting States-parties wish to impose on themselves legal obligations that extend not only to each other, but to all individual foreign nationals, we would ordinarily expect expression of these obligations to be unambiguous").  By requesting the Court to consider the Nigeria MLAT as a "discretion[ary]" factor (VR MOL at p. 7), Respondents seek to circumvent the unambiguous terms of Nigeria MLAT's restriction against private rights of action.  Respondents' failure to satisfy the threshold standing inquiry deprives this court of subject matter jurisdiction to consider the Nigeria MLAT, even as a discretionary factor, or to mandate that Applicants to proceed through the Nigeria MLAT.

---

[8] *See* Nigeria MLAT at Article I(4) https://www.state.gov/wp-content/uploads/2019/04/03-114.1-Nigeria-Law-Enforcmt-Mutual-Legal-Assistance.pdf.

[9] Article 37 of the *Treaty between the United States and Switzerland on Mutual Assistance in Criminal Matters*, May 25, 1973, 27 U.S.T. 2019, T.I.A.S. No. 8302 (the "Swiss MLAT"), provides as follows: "[t]he existence of restrictions in this Treaty shall not give rise to a right on the party of any person to take any action in the United States to suppress or exclude any evidence or to obtain other judicial relief in connection with request under this Treaty, except with respect to [certain enumerated paragraphs.]"  *Davis*, 767 F.2d at 1029.

*See Gutierrez v. Fox*, 141 F.3d 425, 426 (2d Cir. 1998) ("Without jurisdiction, any decision or ruling by the court would be a nullity."); *see also U.S. v. Little*, 12-CR-00647 (ALC), 2014 WL 3604417, at *3 (S.D.N.Y. July 16, 2014) ("This Court need not reach the merits of whether Article 38(1) applies here, however, because, even if it does, Defendant lacks standing to seek an order mandating the Government's use of MLAT procedures under the Second Circuit's decision in *United States v. Davis*, 767 F.2d 1025 (2d Cir. 1985)"); *U.S. v. Al Kassar*, 582 F.Supp.2d 488, 493 n.3 (S.D.N.Y. 2008) (declining to address the defendant's argument that the United States violated a MLAT treaty with Spain "because defendants lack standing to enforce the MLAT treaty or to challenge international law enforcement coordination").

### B.  The Application is Consistent with the Nigeria MLAT

The Nigeria MLAT expressly reserves FRN's right as a sovereign nation and a Contracting Party to utilize the full spectrum of the laws of the United States to obtain discovery in aid of foreign proceedings.[10]  This includes Section 1782.  Specifically, Article XIX, entitled "Other Treaties and Domestic Laws," states:

> Assistance and procedures provided by this Treaty shall not prevent or restrict either of the Contracting Parties from granting any assistance under other applicable international conventions, arrangements, agreements, practices or under the laws of the Contracting Party.[11]

A plain reading of the Nigeria MLAT should lead this Court to conclude that the "laws of the Contracting Party," *i.e.* the United States, includes Section 1782.  Article XIX does not require

---

[10] "Contracting Parties" are defined as the "Government of the United States of America and the Government of the Federal Republic of Nigeria."  *See* Nigeria MLAT at Preamble, https://www.state.gov/wp-content/uploads/2019/04/03-114.1-Nigeria-Law-Enforcmt-Mutual-Legal-Assistance.pdf.

[11] *Id*. at Article XIX.

that Applicants inform, consult or receive prior approval from the Department of Justice before making a direct application for Section 1782 discovery.  Nor does Article XIX require that Applicants successfully navigate through the myriad of procedural hurdles that VR Advisory raises in its papers (*see* VR MOL at pp. 7-8) before Applicants may seek Section 1782 discovery.  Indeed, courts in this district recognize that sovereign nations may bring direct Section 1782 applications to conduct discovery in aid of foreign proceedings.  *See In re Republic of Kazakhstan*, 110 F.Supp.3d 512, 518 (S.D.N.Y. 2015) (Judge Stein denied intervenor's motion to vacate Judge Wood's order granting Kazakhstan's Section 1782 application seeking discovery from the New York office of London based law firm, Clyde & Co LLP).

Moreover, because Applicants have not invoked the Nigeria MLAT, and the Application does not implicate FRN's rights under the Nigeria MLAT, the Nigeria MLAT has no application to this proceeding.  Analyzing a similar provision contained in the MLAT between the Netherlands and the United States, the Second Circuit held that "the treaty has no application to evidence obtained outside the MLAT process." *Rommy*, 506 F.3d at 129 (rejecting the defendant's motion to suppress evidence obtained by the Drug and Enforcement Agency ("DEA") without MLAT authorization).[12]

Respondents' argument is contrary to the basic rationale for all similar bilateral treaties – to facilitate and expand the avenues through which a sovereign nation may seek discovery in aid of a foreign proceeding.  *See In re Premises Located at 840 140th Ave. NE, Bellevue, Wash.*, 634 F.3d 557, 563-64 (9th Cir. 2011) ("The ratification of MLATs in recent decades can be seen as yet another step toward the goal of greater legal assistance by, and for, other nations, at least with

---

[12] Article 18, subsection 1 of the Netherlands MLAT provides as follows: "Assistance and procedures provided by this Treaty ... shall not prevent or restrict, any assistance or procedure available … under the domestic laws of the Contracting Parties."  *Rommy*, 506 F.3d at 129.

respect by requests by foreign governments for use in underlying criminal investigations and proceedings."). Following Respondents' flawed logic, a rogue nation with no bilateral assistance treaty with the United States, such as North Korea, would have a lower bar of entry to seek direct discovery via Section 1782 than nations, including FRN, that the United States has recognized as sharing a common interest.

Respondents' mischaracterization of the Nigeria MLAT as serving a restrictive gatekeeping function (*see* VR MOL at pp. 7-8, 10) ignores the plain language of the Nigeria MLAT requiring that "assistance shall be provided without regard to whether the conduct which is the subject of the investigation, prosecution, or proceeding in the Requesting State would constitute a crime under the laws of the Requested State,"[13] and mandating that before any request for assistance is denied FRN and the United States engage in a meet and confer process.[14]

Respondents rely exclusively on the unpublished and decision devoid of any reasoning issued in the Eastern District of Virginia, *In re Application of Ekpenyong Ntekim*, 1:13-mc-00038-TSE-IDD (E.D. Va. Dec. 18, 2013). *See* ECF 12-1; VR MOL, at pp. 8-9. The *Ekpenyong Ntekim* case is an outlier decision that is inconsistent with both Fourth Circuit (where the Eastern District of Virginia sits) and Second Circuit precedent. In *In re Grand Jury Subpoena*, the Fourth Circuit endorsed *Rommy*, and "conclude[d] that the MLAT is not the exclusive means for the government to obtain documents from a party located in [the defendant's] home country in aid of the government's criminal investigation." *In re Grand Jury Subpoena*, 646 F.3d 159, 164-65 (4th Cir. 2011) (rejecting the defendant's argument that the government's use of grand jury subpoenas to obtain discovery "subverted the limitations on obtaining documents from foreign parties that are

---

[13] *See* Nigeria MLAT at Article I(3), https://www.state.gov/wp-content/uploads/2019/04/03-114.1-Nigeria-Law-Enforcmt-Mutual-Legal-Assistance.pdf.

[14] *Id*. at Article III(2).

imposed by Rule 17 of the Federal Rules of Criminal Procedure and the MLAT between the United States and [the foreign defendant's] home country"); *see also In re Grand Jury, John Doe No. G.J. 2005-2, 478 F.3d 581, 587* (4th Cir. 2007) ("the existence of an alternate means of obtaining information is insufficient to render a subpoena unreasonable…").

In reaching a contrary conclusion, the *Ekpenyong Ntekim* court ignored binding Fourth Circuit precedent, denied the applicant's Section 1782 application, and directed FRN to proceed through the Nigeria MLAT.  *See* ECF 12-1 at p. 2.  In reaching this conclusion, the court failed to consider Article XIX of the Nigeria MLAT.  As *Ekpenyong Ntekim* is inconsistent with both *In re Grand Jury Subpoena* and *Rommy*, the case a nullity with no value.  *See In re Grand Jury Subpoena*, 646 F.3d at 165 (rejecting claim that a MLAT replaced other discovery tools as "the exclusive means for the government to obtain criminal discovery from a party located in that country"); *Rommy*, 506 F.3d at 130 (discovery obtained outside of the MLAT is not subject to MLAT procedures); *SEC v. Collector's Coffee, Inc.*, 19-CIV-4355 (LGS), 2019 WL 8647777, at *2 (S.D.N.Y. June 19, 2019) (declining to follow "non-binding precedent … [that] are inconsistent with the Second Circuit's decision").

To the extent that Respondents rely on *Ekpenyong Ntekim* to imply an exhaustion requirement that Applicants must first seek relief through the Nigeria MLAT prior to obtaining relief via Section 1782, this argument also fails.  The Second Circuit has rejected applying an "quasi-exhaustion" requirement to a Section 1782 Application.  *Mees v. Buiter*, 793 F.3d 291, 303-04 (2d Cir. 2015) (reversing district court order for Section 1782 applicant to initially seek discovery from the local foreign court holding that "[w]e have rejected such a 'quasi-exhaustion' requirement, reasoning that it 'finds no support in the plain language of the statute and runs counter to its express purposes.'").  It is of no matter that Applicants *could have* invoked its rights under

the Nigeria MLAT.  The conclusion remains that there is no requirement under either Section 1782

or the Nigeria MLAT mandating that Applicants exhaust its rights under the Nigeria MLAT, or

any treaty, before seeking direct relief from this Court pursuant to Section 1782.

Recently, in *In re Ex Parte Petition of the Republic of Turkey*, 2:19-CV-20107-ES-SCM,

2020 WL 2539232 (D.N.J. May 18, 2020), the court considered the Republic of Turkey's

("Turkey") direct application for discovery pursuant to Section 1782.  Rejecting the respondent's

argument that Turkey's Section 1782 application was made in circumvention of the mutual

assistance treaty between the Republic of Turkey and the United States, the court stated that:

> Section 1782 requests represent an indirect approach to achieving
> reciprocity with other nations for greater assistance in a variety of
> tribunals, in contrast to treaties for mutual assistance, which
> represent a "direct approach" toward the same end in criminal
> matters.  Both approaches are subject to judicial review and
> Constitutional guarantees of individual rights, but the United States
> Constitution "does not require us to ensure that a foreign
> government offers the same protections as does our Constitution
> before assisting that government."  Requesting assistance through
> §1782 is open to most nations, whereas assistance through a mutual
> assistance treaty is an additional avenue open to countries with such
> treaties.

*In re Ex Parte Petition of the Republic of Turkey*, 2020 WL 2539232, at *6; *see also*, *Republic of*

*Ecuador v. Bjorkman*, 801 F.Supp.2d 1121, 1124 (D. Colo. 2011) (holding that a Section 1782

application did not constitute an attempt to circumvent foreign proof-gathering restrictions where

the foreign tribunal lacked jurisdiction over a respondent located in the United States); *In re IKB*

*Deutsche Industriebank AG*, No.09-CV-7852, 2010 WL 1526070 (N.D. Ill. April 8, 2010)

(rejecting respondent's argument that IKB's Section 1782 application was "an attempt to

circumvent English discovery procedures").  VR Advisory's reference to cases where a MLAT

country opted to pursue discovery through the MLAT procedure, which later prompted a request

for Section 1782 discovery by the Department of Justice (*see* VR MOL p. 8), are inapposite.

Where a nation invokes the MLAT, then the MLAT applies.  Where, as here, a nation does not invoke the MLAT, then the MLAT has "no application." *Rommy*, 506 F.3d at 129.

Respondents' assertion that Section 1782 is violative of the procedures provided in the Nigeria MLAT (VR MOL. at pp. 8-9), is wrong.  Any due process concerns are adequately addressed by Section 1782's requirement that before an order issues granting discovery in aid of a foreign proceeding, the court must make a finding that due process has been satisfied.  As Respondents previously noted through their shell entity, P&ID, Applicants' discovery efforts are now governed by the Federal Rules of Civil Procedure.  The very fact that Respondents filed this Motion proves the point that Section 1782 adequately protects VR Advisory's constitutional due process rights.  *See Gushlak v. Gushlak*, 486 Fed.Appx. 215, 217 (2d Cir. 2015) ("it is neither uncommon nor improper for district courts to grant applications made pursuant to §1782 *ex parte*," and the "respondent's due process rights are not violated because he can later challenge any discovery request by moving to quash pursuant to Federal Rule of Civil Procedure 45(c)(3)").

Respondents provide no evidence supporting its belief that there is a "distinct possibility" that the Department of Justice would decline a hypothetical request by Applicants.  *See* VR MOL at p. 10.  Regardless, Respondents' speculation about FRN procedures and FRN law are beyond the scope of the Court's Section 1782 inquiry.  *See Euromepa, S.A. v. R. Esmerian*, Inc. 51 F.3d 1095, 1199-1100 (2d Cir. 1995) ("[W]e do not read [Section 1782] to condone speculative forays into legal territories unfamiliar to federal judges. Such a costly, time-consuming, and inherently unreliable method of deciding section 1782 requests cannot possibly promote the 'twin aims' of the statute."); *In re Premises*, 634 F.3d at 572 ("the Constitution does not require us to ensure that a foreign government offers the same protections as does our Constitution before assisting that government"); *In re Ex Parte Petition of the Republic of Turkey*, 2020 WL 2539232, at *6

("Granting judicial assistance does not litigate the Republic's internal politics in this District. Rather, §1782 is merely a discovery device to obtain evidence for a foreign tribunal.").

Respondents' reliance on *Kiobel by Smkalden v. Cravath Swaine & Moore LLP*, 895 F.3d 238, (2d Cir. 2018) (*see* VR MOL at p. 9), is misplaced for several reasons.  First, *Kiobel*, concerned attorney-client privileged and other sensitive documents provided by a foreign company to its U.S. lawyers in connection with a prior litigation brought in the United States.  *Kiobel*, 895 F.3d. at 245 ("the first *Intel* factor counsels against granting a Section 1782 petition seeking documents from U.S. counsel for the foreign company").  Second, much of the discovery sought in that case was subject to a previously entered protective order, and the court was concerned that granting Section 1782 discovery to such documents "would undermine confidence in protective orders."  *Id*. at 247.  Third, "law firms may be harmed if they must destroy or return a foreign client's documents as soon as possible once a proceeding is completed.  Or foreign entities may simply be less willing to engage with U.S. law firms."  *Id*. at 248.  None of these concerns apply here.  Respondents do not assert any privilege over P&ID's records, and Applicants have demonstrated that P&ID's records in FRN have likely been lost as a result of P&ID's affiliate's action of burning P&ID's corporate records.  *See* ECF 4-10.  Moreover, Applicants have already engaged in a multi-year investigation into P&ID and now seek information from Respondents in furtherance of these ongoing proceedings and investigations.  *See* AG Malami Declaration. (ECF 4) at ¶¶21-41.  To the extent that VR Advisory believes that its P&ID records include privileged documents or information, VR Advisory can identify the privilege and produce a privilege log as permitted under the Federal Rules of Civil Procedure and Second Circuit precedent.

In sum, Respondents lack standing to seek enforcement of the Nigeria MLAT, and thus the Court lacks subject matter to decide any issues related to the Nigeria MLAT.  Applicants in their

discretion and in the proper exercise of the authority vested in them to prosecute P&ID's fraud elected to pursue discovery Respondents through Section 1782.  Applicants are aware of no legal authority, and Respondents cite none, granting a private litigant's request to enforce a MLAT, and bar a sovereign nation from pursuing lawful discovery pursuant to Section 1782.[15]  For these reasons, the Court should deny Respondents' Motion to vacate the Order or quash the Subpoenas.

## II.    Applicants Satisfy Section 1782's "For Use" Requirement

Section 1782 requires Applicants to establish that "(1) the person from whom discovery is sought resides or is found in the district of the district court to which the application is made, (2) the discovery is for use in a proceeding before a foreign tribunal, which includes a criminal investigation, and (3) the application is made by a foreign or international tribunal or 'any interested person.'"  *In re Application of Chevron Corp.*, 709 F.Supp.2d 283, 290 (S.D.N.Y. 2010). Applicants satisfy the requirements for relief under Section 1782, and the Court should affirm the Order.  Respondents concede that the first and third elements have been satisfied.  As discussed below, Respondents' "for use" challenge has no merit.  As Respondents previously conceded through their shell entity P&ID, Applicants satisfied the requirement that they are seeking to use the discovery in a foreign proceeding.

---

[15] A review of the docket report for the *Ekpenyong Ntekim* case indicates that no objections were raised to the Section 1782 application, and the court *sua sponte* raised the Nigeria MLAT.  *See In re Application of Ekpenyong Ntekim*, 1:13-mc-00038-TSE-IDD (E.D. Va. Dec. 18, 2013) Docket Report.  The court's decision does not indicate that the court considered Article XIX of the Nigeria MLAT expressly permitting FRN to seek relief or assistance under the full spectrum of the laws of the United States.   *See* Nigeria MLAT at Article I(3), https://www.state.gov/wp-content/uploads/2019/04/03-114.1-Nigeria-Law-Enforcmt-Mutual-Legal-Assistance.pdf.

## A. The Section 1782 Discovery Applicants Seek Will Further Applicants' Criminal Investigations and Prosecutions

"The plain meaning of the phrase 'for use in a proceeding' indicates something that will be employed with some advantage or serve some use in the proceeding – not necessarily something without which the applicant could not prevail." *Mees*, 793 F.3d at 298. Moreover, "even where a foreign proceeding has not yet begun, §1782 discovery need not be used at all in drafting the complaint in order to satisfy the 'for use' requirement." *Id*. at 299. In other words, all Applicants need to demonstrate is that the discovery sought from Respondents may at some point be "employed with some advantage" as part of Applicants' ongoing investigations and prosecutions.

"In determining whether the 'for use' statutory requirement is met, the 'focus[] is on two questions: (1) whether a foreign proceeding is adjudicative in nature; and (2) when there is actually a foreign proceeding." *In re Gorsoan Limited*, 435 F.Supp.3d 589, 597 (S.D.N.Y. 2020). Applicants easily satisfy both factors. There can be no dispute that Applicants' investigations and proceedings qualify as foreign proceedings. Throughout the Application, including the supporting declaration submitted by AG Malami, Applicants provide a non-exclusive summary of Applicants' ongoing investigations and prosecutions concerning P&ID's fraudulent GSPA scheme. *See Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 258 (2004) ("Section 1782(a) does not limit the provision of judicial assistance to 'pending' adjudicative proceedings," but also includes "investigation[s] … of a criminal, civil, administrative, or other nature"). Below is a summary of the investigations and prosecutions identified in the Application:

- Applicants have uncovered evidence that P&ID and its affiliates Eastwise Trading Limited ("Eastwise"), Industrial Consultants (International) Limited ("ICIL"), and Lurgi Consults Nigeria Limited ("Lurgi") paid bribes to corrupt former FRN officials, Grace Taiga (then Legal Advisor for the Petroleum Ministry) and Taofiq Tijani (chief assistant to the Ministry of Petroleum. *See* AG Malami Declaration (ECF 4). at ¶¶10, 19.

- In September 2019, criminal charges were brought against Grace Taiga for role in the P&ID fraud, which charges included tax avoidance and money laundering violations. *Id.* at ¶24. Her trial remains pending. *Id.*

- P&ID's directors and officers, including co-founder Brendan Cahill and Adam Quinn have been indicted for several criminal acts in connection with the P&ID fraud, including money laundering. *Id.* at ¶32. The charges remain pending and the men remain at large. *Id.*

- P&ID affiliates ICIL and Goidel Resources Limited ("Goidel"), as well as Goidel director, James Nolan, have been charged with money laundering in connection with the bribe payments made to former FRN officials involved in P&ID's fraud. *Id.*

- Later, in connection with P&ID's efforts to enforce the fraudulently obtained GSPA, P&ID commenced the Arbitration in London. *Id.* at ¶34. In September 2019, Applicants' ongoing criminal investigations in FRN uncovered that P&ID submitted false evidence at the Arbitration. *Id.* at ¶¶38-41. Specifically, P&ID misrepresented that it had invested $40 million into the GSPA project, when, in fact, the work was performed by a third party for an unrelated project. *Id.*

Respondents fail to explain how or why the above-referenced investigations and prosecutions do not satisfy the Section 1782 "for use" prong. Perhaps Respondents believe that Section 1782 mandates a narrow construction with rigid discovery parameters, but such a construction does not comport with Second Circuit precedent.

The Second Circuit has advised that there is "no reason to believe that Congress intended §1782 to provide such parsimonious assistance, permitting discovery only when the applicant demonstrates [it] cannot do without it." *Mees*, 793 F.3d at 299 ("Notably §1782 makes no mention of necessity"); *see also*, *In re Gorsoan Limited*, 435 F.Supp.3d at 597 (the "for use" requirement is to be read as "expansive in nature"). The "focus[] … [is] on the *practical ability* of an applicant to place a beneficial document – or the information it contains – before a foreign tribunal." *In re Accent Delight International Ltd.*, 869 F.3d 121, 131 (2d Cir. 2017) (emphasis in original). Moreover, as the Supreme Court in *Intel* explained, "[i]t is not necessary for the adjudicative proceeding to be pending at the time the evidence is sought, but only that the evidence is eventually to be used in such a proceeding." *Intel*, 542 U.S. at 259.

It is inconceivable that VR Advisory, a sophisticated alternative asset investor, acquired a 25% interest in P&ID without conducting due diligence concerning P&ID as well as the origins and underlying facts concerning P&ID's sole assets, namely the GSPA and the Award.  This due diligence information collected by VR Advisory is highly relevant to Applicants' ongoing investigations and prosecutions.  Moreover, P&ID has been convicted in criminal proceedings in FRN and has been ordered to divest itself of fraudulently obtained proceeds as a result of its fraud.  *See* Malami Declaration (ECF 4) at ¶31.  VR Advisory's acquisition of 25% of P&ID, including the amount VR Advisory paid for the acquisition, *e.g.*, the proceeds paid to P&ID and its directors and officers, are directly relevant to Applicants' ongoing investigations and prosecutions.  *See In re Gorsoan Limited*, 435 F.Supp.3d at 599 ("§1782 permits asset discovery in circumstances where it will be for use in an adjudicative proceeding").  As this discovery can undoubtedly "be employed with some advantage" by Applicants' in their ongoing investigations and prosecutions, Section 1782's "for use" requirement is satisfied.  *See Mees*, 793 F.3d at 298.

### B.  Section 1782 Does Not Restrict the Use of Discovery Material

Lawfully obtained Section 1782 discovery in one proceeding may be used in aid of related foreign proceedings.  "Section 1782 does not prevent an applicant who lawfully has obtained discovery under the statute with respect to one foreign proceeding from using the discovery elsewhere unless the district court orders otherwise."  *In re Accent Delight International Ltd.*, 869 F.3d at 135 (holding that Section 1782 discovery obtained in aid of a proceeding pending in Monaco may lawfully be used in related proceedings pending in France and Singapore).

Respondents' contention that evidence produced in the Bank Application (*see* VR MOL at pp. 12-13), has been employed in the related Arbitration, is based on Respondents' misapprehension of the law.  Section 1782's "for use" prong has never been interpreted to mean

"exclusively for use" or been so narrowly construed.  Respondents' reliance on the hypothetical

concerns raised in *In re Accent* is misplaced.  The concern addressed in *In re Accent*, was that

"parties [would]… institute sham litigation as a cover to obtain Section 1782 discovery for use in

other proceedings that could never have met the requirements for the statute."  *In re Accent*, 869

F.3d at 135.

Respondents fail to provide any evidence that Applicants' years long investigations and

prosecutions are "sham litigations," or that FRN has instituted any proceeding as a "ruse" to obtain

discovery that it otherwise would not have been able to obtain.  The mere existence of related

proceedings, or that evidence obtained in furtherance of Applicants' investigations and

prosecutions have also become relevant to related foreign proceedings is insufficient to make a

finding of bad faith.  *In re Gorsoan*, 435 F.3d at 602.  "Without adequate support for [the

intervenor's] allegations of … bad-faith conduct, [a court] is in no position to question the

propriety of the ongoing litigation … or related proceedings elsewhere."  *Id*. (allegations that the

applicant was "acting as the litigation vehicle for a sanctioned Russian bank and in tandem with

the Russian government's own efforts to identify [the intervenor's] assets and enforce a criminal

judgment against her" were insufficient to demonstrate "bad faith").

Respondents' relevance objection (*see* VR MOL at p. 12) is similarly meritless.

"[R]elevance is defined extremely broadly for the purpose of determining whether to grant a

request for discovery in aid of a foreign proceeding, and a district court should treat requests for

discovery in aid of a foreign proceeding, under section 1782, permissively, especially where, as

here, the discovery is sought from a non-party to the foreign actions."  *In re Application of Sveaas*,

249 F.R.D. 96, 103 (S.D.N.Y. 2008) (rejecting challenge to financial disclosure discovery).

Discovery under Section 1782 is governed by Rule 26 of the Federal Rule of Civil Procedure, and

"relevance … is broadly construed 'to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'"  *Id*. at 107 ("it is inappropriate to deny Sveaas' [Section 1782] discovery requests on the grounds that the requested discovery is irrelevant to Sveaas' foreign claims") (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).  Further, as the Court "is called upon only to resolve a discovery issue that arises from underlying litigation in foreign jurisdictions, the [C]ourt should be particularly wary of denying discovery on relevance grounds."  *Id*.

Respondents' true concern is that discovery will reveal the full extent of P&ID's fraud, and Respondents' complicity therein.  To the extent that Respondents have any concerns about the scope or breadth of any individual document request (*see* VR MOL at p. 12), the Court should direct the parties to engage in the usual meet and confer process, not grant Respondents the extreme relief of vacating the entire Order or quashing the Subpoenas.  Respondents' request that this Court shut down discovery before a single meet and confer has occurred is premature and indicates that VR Advisory is in possession of highly responsive documents that it does not want to disclose.

Respondents' argument that Applicants should not seek documents concerning P&ID, or that P&ID is a party in other foreign proceedings adverse to FRN (*see* VR MOL p. 13), lacks merit. In *In re Republic of Kazakhstan*, Judge Stein rejected a nearly identical argument brought by intervenors seeking to vacate Judge Wood's order granting Kazakhstan's Section 1782 application. Kazakhstan sought documents from the New York office of the law firm of Clyde & Co., specifically documents concerning clients of Clyde & Co., that were adverse to Kazakhstan in Swedish arbitrations.  *See In re Republic of Kazakhstan*, 110 F.Supp.3d at 517.  The intervenors asserted that Kazakhstan's "failure to request these documents from the Swedish tribunal … indicates that the Swedish tribunal would be unlikely to compel the production of these materials

and demonstrates that [Kazakhstan's] discovery request is an attempt to circumvent foreign discovery restrictions." *Id*. Rejecting this argument, Judge Stein held that "[t]here is no requirement that the party seeking discovery pursuant to section 1782 must first request discovery from the foreign tribunal." *Id*. Whether P&ID's records in FRN were destroyed or "moved out of Nigeria," the fact remains that Applicants have properly enlisted the assistance of the Court pursuant to Section 1782 to conduct discovery from Respondents. *See* ECF 23-4.

The key considerations for Section 1782 purposes are that VR Advisory, P&ID's 25% owner and from whom the discovery is sought, is found in this district and is not a participant in any foreign proceedings involving Applicants. This type of Section 1782 discovery is regularly granted by our courts. *Marubeni America Corp. v. LBA Y.K.*, 335 Fed. Appx 95 (2d Cir. 2009) (affirming grant of Section 1782 discovery against US subsidiary of foreign parent involved in foreign proceedings); *In re Ex Parte Application of Kleimar N.V.*, 220 F.Supp.3d 517 (S.D.N.Y 2016) (Section 1782 order granted where the foreign subsidiary was "found" in New York).[16]

## CONCLUSION

Respondents lack standing to seek enforcement of the Nigeria MLAT or to request that the Court vacate the Order and direct Applicants to seek relief through the Nigeria MLAT. Because Respondents lack standing, the Court lacks subject matter jurisdiction to determine any issues related to the Nigeria MLAT. Regardless, because the Nigeria MLAT expressly preserves

---

[16] VR Advisory's reliance on *In re Postalis*, No. 18-mc-497 (JGK), 2018 WL 6725406 (S.D.N.Y. 2018) (*see* VR MOL p. 13 n. 8) is misplaced. In *In re Postalis*, the applicant "publicly declared that it was using [the Section 1782] discovery application to obtain discovery for use in a pleading a case against BNY Mellon in the United States." *Id*. at *3. By contrast, FRN was dragged into court by P&ID when P&ID commenced an action in the District of Columbia District Court, *Process and Industrial Developments Limited v. Federal Republic of Nigeria et al*, No. 1:18-cv-00594, seeking to enforce the Award.

Applicants' right to utilize the full spectrum of the laws of the United States, including Section 1782, there are no grounds to vacate the Order of quash the Subpoenas.

Respondents' assertion that the Application does not satisfy Section 1782's "for use" requirement ignores Applicants' presentation of ongoing investigations and prosecutions. Respondents' conjecture that the discovery sought in this Section 1782 application is not "for use" in Applicants' investigations and prosecutions is premised on overly-restrictive and narrow interpretation of Section 1782 that is inconsistent with Second Circuit precedent. Section 1782 permits Applicants to employ lawfully obtained discovery in aid of foreign proceedings for which the discovery is sought, as well as related foreign proceedings. For the foregoing reasons, Applicants request that the Court deny Respondents' Motion in its entirety, lift the discovery stay, and order Respondents to promptly commence producing responsive documents.

Dated: July 10, 2020
       New York, New York

                                        MEISTER SEELIG & FEIN LLP

                              By:  Alexander D. Pencu
                                   Alexander D. Pencu, Esq.
                                   Christopher J. Major, Esq.
                                   Austin D. Kim, Esq.
                                   125 Park Avenue, 7th Floor
                                   New York, NY 10017
                                   (212) 655-3500
                                   adp@msf-law.com
                                   cjm@msf-law.com
                                   adk@msf-law.com

                                   *Attorneys for Applicants Federal*
                                   *Republic of Nigeria, and Attorney*
                                   *General Abubakar Malami*