UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

THE FEDERAL REPUBLIC OF NIGERIA, and
ABUBAKAR MALAMI, THE ATTORNEY
GENERAL OF THE FEDERAL
REPUBLIC OF NIGERIA,

                                        Applicants,

                        -v-

VR ADVISORY SERVICES, LTD., VR ADVISORY
SERVICES (USA) LLC, VR CAPITAL GROUP, LTD.,
VR GLOBAL ONSHORE FUND, L.P., VR ARGENTINA
RECOVERY ONSHORE FUND II, L.P., RICHARD
DIETZ, JEFFREY JOHNSON, and ASHOK RAJU,

                                        Respondents.

20 Misc. 209 (PAE)

OPINION & ORDER

---

PAUL A. ENGELMAYER, District Judge:

Petitioners the Federal Republic of Nigeria and the Honorable Abubakar Malami, the

Attorney General of the Federation and Minister of Justice of Nigeria (together, "Applicants"),

initiated this matter as an *ex parte* petition for judicial assistance pursuant to 28 U.S.C. § 1782 to

conduct discovery for use in a foreign proceeding.  Before the Court is a motion by VR Advisory

Services Ltd., VR Advisory Services (USA) LLC, VR Global Onshore Fund, L.P., VR Argentina

Recovery Onshore Fund II, L.P., Jeffrey Johnson, and Ashok Raju (together, "Respondents") to

vacate the Court's order granting the application pursuant to § 1782 and to quash the subpoenas

served on Respondents pursuant to that application.  *See* Dkt. 10.  For the following reasons, the

Court grants Respondents' motion and vacates the Court's earlier order authorizing such

discovery.

I.      **Background**[1]

A.      **Nigeria and P&ID's Dispute and Arbitration**

In January 2010, the Nigerian petroleum ministry entered into a natural gas processing agreement, the Gas Supply and Processing Agreement ("GSPA"), with Process & Industrial Developments Limited ("P&ID"), for a term of 20 years.  Application at 1.  The agreement required P&ID to construct and operate a gas processing plant in Nigeria that would turn wet gas, a by-product of crude oil production, into electricity.  *Id.* at 1; App. Opp'n at 3.  The GSPA provided that, in the event of a dispute, the parties could refer the dispute to arbitration under the rules of the 2004 Nigerian Arbitration and Conciliation Act ("the Act").  *See Fed. Republic of Nigeria v. Process & Indus. Devs. Ltd.* [2020] EWHC (Comm) 2379 [22] (Eng.) (also at Dkt. 27-1 ("English Appeal")).

In 2012, after such a dispute arose, P&ID sent a Notice of Arbitration to Nigeria to commence proceedings under the Act and brought an arbitration action in London, claiming that Nigeria had failed to perform under the agreement.  App. Opp'n at 3; English Appeal at [27].

In 2015, the London arbitral tribunal found that Nigeria had repudiated the GSPA.  *See Process & Indus. Devs. Ltd. v. Fed. Republic of Nigeria* [2019] EWHC (Comm) 2241 (Eng.), 2019 WL 03848529 ("English Judgment").  In 2017, the tribunal issued an arbitral Award (the "Award") granting P&ID $6.6 billion, plus interest, from Nigeria for the profits that P&ID had lost on account of Nigeria's breach.  App. Opp'n at 3; English Judgment.

---

[1] The Court draws its account of the underlying facts from the parties' respective submissions including: Applicants' § 1782 Application, Dkt. 3 ("Application"); Respondents' memorandum of law in support of their motion to vacate the Court's order and quash the subpoenas. Dkt. 21 ("VR Mem."); Applicants' opposition to that motion, Dkt. 25 ("App. Opp'n"); Respondents' reply, Dkt. 26 ("VR Reply"); and the transcript of the October 22, 2020 oral argument, Dkt. 33 ("Arg. Tr.").

### B.    P&ID's Enforcement Actions and VR's Stake in P&ID

In March 2018, P&ID brought actions to enforce the Award in the Commercial Court for England and Wales and in the United States District Court for the District of Columbia.  App. Opp'n at 3; *see Process & Indus. Devs. Ltd. v. Fed. Republic of Nigeria*, 962 F.3d 576, 580 (D.C. Cir. 2020).  In 2019, the Queen's Bench Division of the Commercial Court of England and Wales found that P&ID could enforce the award in the United Kingdom.  *See* English Judgment.

Also in 2018, VR Advisory Services, Ltd. ("VR Advisory"), a respondent here, acquired a 25% interest in P&ID.  Application at 2.  The discussions between VR Advisory and P&ID that led to that agreement had begun in August 2017.  Arg. Tr. at 21.

### C.    Nigeria's Investigation and Prosecution of P&ID

In August 2018, the Nigerian Economic and Financial Crimes Commission (the "EFCC") commenced an investigation into P&ID and the GSPA.  App. Opp'n at 6.  In mid-2019, Nigeria initiated a prosecution of P&ID, certain of its affiliates and agents, and Nigerian officials who were alleged to have accepted bribes from P&ID.  Application at 11.  Applicants state that Nigeria's investigations demonstrated that P&ID had never had the capacity to perform its obligations under the GSPA and never did any work on the project.  *Id.* at 1.  Applicants also state that the investigation uncovered evidence of hundreds of thousands of dollars of bribe payments paid by P&ID and its affiliates to Nigerian government officials to avoid proper scrutiny during the GSPA's approval process.  *Id.* at 2.  Applicants further assert that the investigation yielded evidence that P&ID won the Award as a result of perjured testimony by bribed Nigerian officials.  App. Opp'n at 5–6, 8.  The EFCC's investigation and prosecution arising out of P&ID's alleged corrupt practices relating to the Award are ongoing.  Application at 12.

In December 2019, Nigeria, based on facts gained in the investigation, challenged the

Award and brought an appeal in London.  App. Opp'n at 3.  Enforcement of the Award in

England has been stayed pending Nigeria's appeal.  *Id*.

### D.      Nigeria's Initial § 1782 Application in this District

On March 25, 2020, Nigeria filed an application in the Southern District of New York,

pursuant to 28 U.S.C. § 1782, requesting discovery for use in the EFCC investigation in Nigeria.

*See In re Ex Parte Application of the Fed. Republic of Nigeria and Abubakar Malami, the Att'y*

*Gen. of the Fed. Republic of Nigeria*, No. 20 Misc. 169 (LGS) (S.D.N.Y. May 7, 2020) ("First

§ 1782 Application").  That application was assigned to Judge Schofield.  *Id*.  P&ID intervened.

Although P&ID did not oppose the application, it requested that it be provided with "copies of

all documents produced, and with the opportunity to attend all depositions conducted, pursuant

to the subpoenas."  First § 1782 Application, Dkt. 13 at 1.

Judge Schofield granted Nigeria's § 1782 application, while also granting P&ID's request

to access the materials produced.  First § 1782 Application, Dkt. 18.  Applicants now state that

the discovery application granted by Judge Schofield yielded additional evidence of P&ID's

corruption, fraud, and bribery.  App. Opp'n at 7.  Although Nigeria had represented to Judge

Schofield that its § 1782 application was for discovery in aid of its criminal proceedings, Nigeria

submitted evidence gained from that § 1782 application to the English Court to aid its appeal of

the Award.  First § 1782 Application, Dkt. 17; VR Mem. at 4; English Appeal.

Based in part on the discovery that Nigeria obtained through its prior § 1782 action in this

District, on September 4, 2020, the High Court of Justice in London issued a judgment granting

Nigeria's application for an extension of time to bring challenges against the Award.  English

Appeal.  The English High Court of Justice found that Nigeria had presented a *prima facie* case

"that the GSPA was procured by bribery," citing evidence that Nigeria had obtained through the

§ 1782 discovery application granted by Judge Schofield.  *Id.* at [196], [226].  The English High

Court noted that Nigeria's successful presentation of a *prima facie* case still left the burden on

Nigeria to prove the alleged fraud at trial.  *See id.* at [184], [267].

     **E.**     **The Instant § 1782 Action**

     On May 5, 2020, Applicants—the Federal Republic of Nigeria and Abubakar Malami, its

Attorney General—initiated this action, bringing an *ex parte* petition for judicial assistance

pursuant to 28 U.S.C. § 1782.  Dkt. 1.  They moved for an order permitting them to issue

subpoenas pursuant to Federal Rules of Civil Procedure 26 and 45 directing VR Advisory and

various affiliates—VR Advisory Services, Ltd., VR Advisory Services (USA) LLC, VR Capital

Group, Ltd. ("VR Capital"), VR Global Onshore Fund, L.P., VR Argentina Recovery Onshore

Fund II, L.P., and directors and officers Richard Dietz, Jeffrey Johnson, and Ashok Raju—to

produce documents and provide deposition testimony.  *Id.*  Applicants represented that the

discovery they sought was for use in the criminal investigations and proceedings related to P&ID

that are pending in Nigeria.  *Id.*  Applicants explained that their interest in obtaining discovery

from VR and affiliates was based on the assumption that, before acquiring a 25% stake in P&ID,

VR Advisory had "conducted due diligence into both the GSPA and the arbitral award."

Application at 3.  The Applicants state that they seek those due diligence materials, as well as

other records held by Respondents concerning P&ID, the GSPA, and the Award.  *Id.* at 3–4.

     On May 14, 2020, this Court, based on the *ex parte* application, granted Applicants'

discovery request under § 1782.  Dkt. 10.  Applicants then served the subpoenas.  On June 22, 2020,

after accepting service, counsel to Respondents moved to vacate the Court's order and quash the

subpoenas.  VR Mem.[2]  They further asked the Court to implement an interim stay of discovery until their motion was resolved.  *See id.*  On June 29, 2020, the Court set a briefing schedule as to Respondents' motion, and stayed discovery pending resolution of the motion.  Dkt. 24.  On July 10, 2020, Applicants filed an opposition to Respondents' motion.  App. Opp'n.  On July 14, 2020, Respondents filed a reply.  VR Reply.

On September 8, 2020, Applicants, by letter, notified the Court of the recent judgment of the High Court of Justice for England and Wales giving Nigeria additional time to challenge the Award and finding that Nigeria had established a *prima facie* case of fraud perpetrated by P&ID. Dkt. 27 ("App. Letter"); English Appeal.  On September 18, 2020, Respondents filed a letter noting that, in so ruling, the English High Court had made only a *prima facie*, not a conclusive, finding of fraud, and that Nigeria retained the burden of proving fraud at trial.  Dkt. 28. Respondents also emphasized that VR and its affiliates and officers are distinct from P&ID.  *Id.*

On October 22, 2020, the Court held argument on Respondents' motion to vacate.

## II.    Discussion

The Court first reviews the legal standards for granting a § 1782 petition; then addresses Respondents' argument that the Applicants fail to satisfy § 1782's statutory requirements; and then addresses Respondents' argument that, even if the statutory requirements are met, the Court should exercise its discretion to quash the subpoenas.

### A.    Applicable Legal Standards

Under 28 U.S.C. § 1782, a district court may grant a petition for judicial assistance to foreign litigants or tribunals where "(1) the person from whom discovery is sought resides (or is

---

[2] Of the eight parties as to whom the Court authorized subpoenas pursuant to § 1782, two (Richard Dietz and VR Capital) appear to be outside the jurisdiction, have not accepted service, and are not party to Respondents' motion to vacate.  Arg. Tr. at 22–23.  The Court's ruling here, vacating the Application, applies only to Respondents in this action.

found) in the district of the district court to which the application is made, (2) the discovery is for

use in a foreign proceeding before a foreign [or international] tribunal, and (3) the application is

made by a foreign or international tribunal or any interested person." *Mees v. Buiter*,

793 F.3d 291, 297 (2d Cir. 2015) (quoting *Brandi-Dohrn v. IKB Deutsche Industriebank AG*,

673 F.3d 76, 80 (2d Cir. 2012)); 28 U.S.C. § 1782(a). "The goals of the statute are to provide

'equitable and efficacious' discovery procedures in United States courts 'for the benefit of

tribunals and litigants involved in litigation with international aspects,' and to 'encourag[e]

foreign countries by example to provide similar means of assistance to our courts.'" *Brandi-*

*Dohrn*, 673 F.3d at 80 (alteration in original) (internal citations omitted).

Once a court is satisfied that these statutory requirements are met, it "is free to grant

discovery in its discretion." *Schmitz v. Bernstein Liebhard & Lifshitz, LLP*, 376 F.3d 79, 83–84

(2d Cir. 2004) (internal quotations omitted). A "district court has considerable discretion as to

whether to exercise its authority to grant a discovery application under 28 U.S.C. § 1782." *In re*

*Application of Consellior Sas*, No. 16 Misc. 400 (WHP), 2017 WL 449770, at *1 (S.D.N.Y.

Feb. 2, 2017). To help guide this discretion, in *Intel Corp. v. Advanced Micro Devices, Inc.*,

542 U.S. 241 (2004), "the Supreme Court identified four additional 'factors that bear

consideration in ruling on a § 1782(a) request.'" *Mees*, 793 F.3d at 298 (quoting *Intel*, 542 U.S.

at 264). These "*Intel* factors" are:

> (1) whether "the person from whom discovery is sought is a participant in the
> foreign proceeding," in which case "the need for § 1782(a) aid generally is not as
> apparent"; (2) "the nature of the foreign tribunal, the character of the proceedings
> underway abroad, and the receptivity of the foreign government or the court or
> agency abroad to U.S. federal-court judicial assistance"; (3) "whether the § 1782(a)
> request conceals an attempt to circumvent foreign proof-gathering restrictions or
> other policies of a foreign country or the United States"; and (4) whether the request
> is "unduly intrusive or burdensome."

*Id.* (quoting *Intel*, 542 U.S. at 264–65).

### B.    Statutory Analysis

The first and third statutory requirements are easily met here.  As to the first, the six Respondents are undisputedly located in this District, where the application for discovery was made.  *See* Application 14–15; *Mees*, 793 F.3d at 297.  And as to the third, Respondents do not dispute that Applicants, Nigeria and its Attorney General, qualify as "a foreign or international tribunal or . . . any interested person."  28 U.S.C. § 1782(a); *see* Application at 16; *Young v. U.S. Dep't. of Justice*, No. 87 Civ. 8307 (JFK), 1988 WL 131302, at *6 (S.D.N.Y. Nov. 28, 1988) (determining that the "Attorney General [of a foreign nation] is an 'interested person' within the meaning of section 1782."), *aff'd*, 882 F.2d 633 (2d Cir. 1989).

Respondents, however, argue that the Application fails the second requirement: that the discovery be "for use" in a foreign proceeding.  *See Mees*, 793 F.3d at 297.  Applicants have represented that the discovery they seek is for use in the criminal investigations and proceedings pending in Nigeria with respect to persons and entities that participated in or benefitted from P&ID's alleged fraud and bribery in procuring the GSPA.  Application at 15.  But Respondents contend that Nigeria's actual intention is to use such discovery in its separate efforts in London to undermine the $6.6 billion arbitral Award secured by P&ID.  Respondents note that when the same Applicants sought U.S. discovery in their earlier § 1782 action, they represented to Judge Schofield that such discovery was for use in criminal proceedings in Nigeria, and denounced as "rank speculation" P&ID's suggestion that they intended to use such discovery to challenge the Award.  But Applicants proceeded to do just that.  *See* VR Mem. at 12; *see also* First § 1782 Application, Dkt. 17 at 4.  And, Respondents note, at least some of the discovery Nigeria and its Attorney General now seek appears "completely unrelated to its criminal investigation, such as the bid for '[a]ll documents and communications concerning the enforcement of any award

granted in the Arbitration' between P&ID and Nigeria.'"  VR Mem. at 12–13 (quoting Dkt. 5-1 at 6 and Dkt. 22-2 at 6 (together, "Subpoenas")).

Had Applicants' § 1782 application stated that the Applicants' goal was to use the U.S. discovery they sought to support Nigeria's challenge to the arbitral Award, the Application, on the present record, would fail § 1782's second statutory requirement.  In *In re Letters Rogatory Issued by Director of Inspection of Government of India*, 385 F.2d 1017, 1020–21 (2d Cir. 1967) ("*India*"), Judge Friendly, writing for a unanimous panel, held that the requirement that the U.S. discovery be "for use" before a foreign "tribunal" requires that the proceeding in question be adjudicative in nature.  And in *Euromepa, S.A. v. R. Esmerian, Inc.*, 154 F.3d 24 (2d Cir. 1998), the Circuit affirmed the denial of a § 1782 motion in circumstances pertinent here.  The petitioners there sought U.S. discovery for use in a French bankruptcy proceeding.  Rejecting that bid, the Circuit held that such was "not an adjudicative proceeding within the meaning of [§ 1782]" because "[t]he merits of the dispute between [the parties had] already been adjudicated and [would] not be considered" anew, as "nothing is being adjudicated [and] the already extant judgment is merely being enforced."  *Id.* at 28.

The pending English arbitral-enforcement proceeding appears to be of a similar post-judgment character.  And Applicants, tellingly, have not made any showing as to why their attempt in that forum to void or undermine enforcement of that Award makes that proceeding "adjudicative in nature."  Applicants therefore have not met their burden to show that the use of the documents in the English proceeding would be a permitted use under § 1782.  *See In re Schlich*, 893 F.3d 40, 49 (1st Cir. 2018) ("[T]he party seeking discovery under § 1782 [has] the burden of establishing that all the statutory requirements were met in order for the court to even consider exercising its discretion to grant the requested relief."); *see also In re MT BALTIC*

*SOUL Produktentankschiff Ahrtsgesellschaft mgH & Co. KG*, No. 15 Misc. 319 (LTS), 2015 WL 5824505, at *2 (S.D.N.Y. Oct. 6, 2015) ("[S]ection 1782 discovery . . . is inappropriate where the merits of a controversy have already been decided by the foreign tribunal.").  Respondents therefore argue that Applicants' concealed intention is again to use the discovery they receive via § 1782 to attack the Award, and that Applicants have misled the Court in feigning an intention to use this discovery in Nigerian criminal proceedings.  *See* VR Mem. at 12; *In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 135 (2d Cir. 2017) (evidence that an "applicant is attempting to use foreign litigation as a ruse for obtaining discovery . . . might support denying the Section 1782 application" (internal quotations omitted)); *In re MT BALTIC SOUL*, 2015 WL 5824505, at *2 (requiring, to satisfy the second statutory requirement of § 1782, a "concrete basis" for "a determination that the discovery is actually being sought in aid of a contemplated foreign adjudicative proceeding").

Confronted with this argument and the fact of their earlier use of U.S. discovery gained via § 1782 to attack the Award, Applicants this time acknowledge that it is possible that they will again use the U.S. discovery they seek to challenge the Award in England.  But, they argue, that would be permissible, because their predominant purpose is to use this discovery in the Nigerian criminal proceedings.[3]  Applicants' legal premise is correct:  Where an applicant's main purpose in seeking U.S. discovery under § 1782 is permitted, the second statutory prong of § 1782 is met, notwithstanding the possibility of a separate use in a non-qualifying proceeding.  *See In re*

---

[3] Applicants also briefly urge that Nigeria's attempt in England to upset or bar enforcement of the $6.6 billion Award "is a[n] . . . independently qualifying foreign proceeding." App. Opp'n at 4.  But that statement is conclusory.  As noted, Applicants have not set out facts about the nature and operation of the English proceeding that might qualify it as an "adjudicative proceeding" within the meaning of § 1782.  Nor have they identified supportive case law; the most apposite Second Circuit precedents (including *India* and *Euromepa*) have not so treated the post-judgment enforcement proceedings there at issue.

*Accent Delight Int'l Ltd*., 869 F.3d at 135 ("Section 1782 does not prevent an applicant who lawfully has obtained discovery under the statute with respect to one foreign proceeding from using the discovery elsewhere unless the district court orders otherwise.").  In contrast, an Applicant whose concealed purpose was to use the discovery for purposes outside § 1782's writ does not satisfy the statutory requirement of use in a foreign proceeding.  *See id.* (noting concern that parties would "institute sham litigation as a cover to obtain Section 1782 discovery for use in other proceedings that could never have met the requirements for the statute.").  Therefore, whether the Application satisfies the second statutory requirement turns on whether Applicants' predominant purpose in seeking discovery from VR and its affiliates is, as represented, for use in the Nigerian criminal investigation or proceedings, or, as Respondents urge, to aid Nigeria in its attempt in England to block enforcement of the arbitral Award.

This is a factual question, and one the Court views as close.  There are strong indications, including the nature of some of the discovery demands in Applicants' requested subpoenas, that Applicants intend again to use some of the evidence they seek to attack the Award.  However, the Court is prepared to assume *arguendo* that the second statutory prong is satisfied.  The record is convincing that a criminal investigation in Nigeria into P&ID's conduct is underway.  And Respondents, while suggesting that that investigation is animated by the goal of finding evidence or bringing charges that Nigeria can cite in its attack on the arbitral Award, have not adduced evidence that that investigation is a sham.  On the contrary, Nigeria has presented to this Court evidence—including receipt of payments by multiple P&ID personnel—that it contends is indicative of potential bribe payments by P&ID to influence Nigerian officials.  App. Opp'n at 7–8.  And Applicants' premise that VR and its affiliates, via the due diligence they conducted before acquiring a 25% stake in P&ID, might have come to possess evidence regarding the

origins of the GSPA, is not implausible.  Without more compelling evidence to this effect, the
Court will not assume bad faith on the part of Applicants, who are a foreign sovereign and its
Attorney General.  *See In re Gorsoan Ltd.*, 435 F. Supp. 3d 589, 602 (S.D.N.Y. 2020) (The court
will not assume applicant's bad faith "[w]ithout adequate support for their allegations of
[petitioners'] bad-faith conduct.").

The Court thus either finds (as to the first and third statutory requirements) or assumes
*arguendo* (as to the second) that the § 1782 statutory requirements are met.  The Court
accordingly turns to the discretionary *Intel* factors.

### C.    Discretionary Analysis: The *Intel* Factors

Even where the statutory factors are met, the Court "is not required to grant a § 1782(a)
discovery application simply because it has the authority to do so."  *See Intel Corp.*, 542 U.S. at
264.  The Court's discretionary inquiry is guided by the factors articulated in *Intel.*

#### 1.    First *Intel* Factor

The first *Intel* factor inquires whether "the person from whom discovery is sought is a
participant in the foreign proceeding."  *Id.*  If so, "the need for § 1782(a) aid generally is not as
apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising
abroad" because "[a] foreign tribunal has jurisdiction over those appearing before it, and can
itself order them to produce evidence."  *Id.*  "In contrast, nonparticipants in the foreign
proceeding may be outside the foreign tribunal's jurisdictional reach; hence, their evidence,
available in the United States, may be unobtainable absent § 1782(a) aid."  *Id.*

In a strictly literal sense, this factor favors the Application, because VR and its affiliates
are not parties to the criminal proceedings in Nigeria, the type of proceeding which, on the
record before the Court, presents a valid use under § 1782.

Respondents, however, make a persuasive argument why this factor does not, other than in form, favor ordering discovery from them.  As they note, the discovery sought from the VR entities derives overwhelmingly from, and thus also ought to be available from, P&ID, which is a party to the criminal proceedings in Nigeria.  VR Reply at 9.  VR, Respondents note, acquired its stake in P&ID in 2018, and was not a participant in Nigeria's granting of the GSPA in 2010 to P&ID.  Thus, to the extent that documents bearing on those events—which are among those the Application seeks—are today held by VR and its affiliates, these likely came from P&ID.  *See, e.g.*, Application at 3 (request for documents concerning VA's due diligence preceding that acquisition).  The Application also seeks documents relating to the arbitral Award won by P&ID in connection with Nigeria's breach of the GSPA, and to P&ID's attempts to enforce that Award.  *See id.* (requesting discovery of "(1) documents regarding the acquisition of P&ID by VR Respondents and Lismore Capital; (2) financial records concerning P&ID, its known affiliate entities and their owners (past and current); (3) P&ID's historic and current business operations relating to the GSPA and the Award; (4) documents concerning the negotiation, execution and enforcement of the GSPA; and (5) documents concerning the procurement of and efforts to enforce the Award by P&ID").  Respondents note that VA likely acquired documents in these categories, too, from P&ID.

In response, the Applicants make two arguments—one legal, one factual.  As to the first, they argue that *In re Republic of Kazakhstan*, 110 F. Supp. 3d 512 (S.D.N.Y. 2015), supports their use of § 1782 to gather documents of P&ID's now held by VA.  App. Opp'n at 23–24.  There, the § 1782 applicant was permitted to seek documents from a New York law firm concerning clients who were adverse to Kazakhstan in a foreign arbitration proceeding.  That case, however, is inapposite, because the clients of the law firm whose documents were at issue

were (like the firm) not "parties to the foreign action at issue." 110 F. Supp. 3d at 516. Here, in contrast, the documents sought from Respondents concern (and appear largely to derive from) P&ID, which is a party to the Nigerian criminal proceedings.

Applicants' factual argument is that P&ID's corporate records stored in Nigeria were destroyed in or around January 2017, and thus can no longer be obtained from P&ID. Application at 13. Accordingly, Applicants argue, notwithstanding P&ID's status as a party in the Nigerian criminal proceedings, the Court should exercise its discretion to allow them to seek such documents from P&ID part-owner VR and its affiliates. This argument is problematic, however. Applicants do not explain why it is reasonable to assume that VA, which acquired its interest in P&ID in 2018, is likely to have received copies of P&ID records that the Applicants claim were destroyed in early 2017, before VR's due diligence began. And to the extent that the Applicants seek documents later obtained by the RA entities from P&ID, "the real party from whom documents are sought" is P&ID, and because P&ID is "involved in [the] foreign proceedings," "the first *Intel* factor counsels against granting a Section 1782 petition seeking [those] documents." *Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 245 (2d Cir. 2018).

The Court finds this factor only nominally to favor allowing U.S. discovery under § 1782. In substance, this factor merits little, if any, weight. That is because P&ID—which is involved in the Nigerian criminal proceeding—is the likely source of documents held by Respondents relevant to that proceeding. And Applicants have not persuasively explained why Respondents likely hold documents relevant to that proceeding, let alone documents that P&ID no longer possesses. *See id*.

14

### 2.    The Second *Intel* Factor

The second *Intel* factor examines "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance." *Intel*, 542 U.S. at 264.  The Applicants represent that the EFCC and other Nigerian criminal investigative commissions are receptive to receiving the discovery sought here.  Application at 18.  Respondents do not dispute this or argue that this factor favors denying discovery.  The Court accordingly treats this factor as consistent with exercising discretion in favor of the requested application.

### 3.    The Third *Intel* Factor

The third *Intel* factor asks "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel Corp.*, 542 U.S.at 265.  Respondents emphasize this factor.  They argue that it strongly disfavors the § 1782 application.  Having closely considered this factor and inquired extensively of counsel about it at argument, the Court agrees both that this factor merits the greatest weight in the discretionary analysis here, and that it strongly counsels against authorizing U.S. discovery under § 1782.

The § 1782 application here by Nigeria and its Attorney General is highly unusual.  In the ordinary course, a foreign sovereign seeking evidence in the United States for use in a foreign criminal investigation or prosecution proceeds under the Mutual Legal Assistance Treaty ("MLAT") among it and the United States.  It is irregular for a foreign sovereign seeking criminal-case discovery within the United States to bypass an MLAT mechanism in favor of a direct application to a federal court.  A § 1782 application in this posture is so unusual that Applicants—even after Respondents noted the unusual nature of this application—were unable to identify any instance in which another foreign sovereign, having forwent the processes for

obtaining U.S. discovery set forth in the MLAT, successfully obtained criminal discovery under § 1782.

To be sure, there is no principle of law compelling a foreign nation seeking evidence in this country for use in a criminal case to proceed first via an MLAT.  But there are sound reasons for generally channeling such discovery applications through the MLAT process.  Doing so promotes comity and consistent outcomes as to such requests, adds protection for the domestic entities from whom discovery is sought by foreign prosecutors and criminal investigators, and assures that the U.S. government's expertise and analytic rigor is applied to the application, including to assure that the discovery is not sought for ulterior (non-prosecutive) ends.  *See, e.g.*, Peter Swire & Justin D. Hemmings, *Mutual Legal Assistance in an Era of Globalized Communications: The Analogy to the Visa Waiver Program*, 71 N.Y.U. Ann. Surv. Am. L. 687, 699 (2017) (explaining that, under MLATs, the U.S. government must "review[] the request and deem[] it appropriate" before filing a discovery request with the federal district court).

The United States and the Federal Republic of Nigeria have such a treaty.  *See* Treaty Between the Government of the United States of America and the Federal Republic of Nigeria on Mutual Legal Assistance in Criminal Matters, U.S.-Nigeria, Sept. 13, 1989, T.I.A.S. No. 03-114.1 ("MLAT").  It provides that the parties "shall, upon request and in accordance with the provisions of this Treaty, provide mutual assistance in connection with the investigation, prosecution, and prevention of crimes, and in proceedings related to criminal matters."  *Id.* art. I, § 1.  Article II of the MLAT designates a Central Authority in each country responsible for making and receiving requests under the Treaty.  It designates the Attorney General of the United States, or his or her designee, as the Central Authority for the United States to make and receive requests pursuant to the MLAT.  *Id.* art. II, § 2.  Similarly, for the Federal Republic of

16

Nigeria, the Central Authority is the Attorney General or his or her designee.  *Id*.  Under the

MLAT, when the Nigerian Attorney General makes a discovery request to the U.S. Attorney

General of the United States that is approved, it is the U.S. Department of Justice ("DOJ") rather

than Nigeria that then asks a federal district court to issue the subpoenas.  *Id*. art. V, § 1; s*ee* 18

U.S.C. § 3512(a)(1) (authorizing federal courts to issue orders to execute requests from a foreign

authority "[u]pon application, duly authorized by an appropriate official of the Department of

Justice").  Like other MLATs, the treaty between the United States and Nigeria limits the types

of criminal matters for which the United States  will authorize discovery.  *See, e.g.*, MLAT art.

III, § 1 (stating that the DOJ may deny assistance if "the request relates to a political offense . . .

[or] the execution of the request would be contrary to the Constitution of the Requested State . . . .").

The U.S.-Nigeria MLAT thus puts in place a regular procedure for Nigeria to request

assistance from the United States for discovery in Nigerian criminal cases.  It places the initial

burden on the DOJ to assess which discovery requests accord with the MLAT and satisfy the

requirements of due process before Nigeria's requests, as modified and pruned by DOJ, are

submitted to a district court for its discretionary review.  Similar MLATs are widely in place

between the United States and other nations.  And, based on the authorities the parties have

mustered, other foreign prosecutors appear to have consistently pursued discovery via the

governing MLAT rather than proceeding in the first instance to a district court under § 1782.

Notably, although Applicants have pointed to a number of cases in which the DOJ invoked

§ 1782 to obtain discovery in aid of a foreign criminal proceedings on behalf of foreign

prosecutors, all of those discovery requests were made in accordance with the foreign country's

respective MLAT.  *See* App. Opp'n at 12–17.  With the exception of Nigeria's earlier—and

unopposed—discovery application before Judge Schofield, Applicants have failed to point to any

other foreign sovereign who was granted permission under § 1782 to take discovery in support of

a criminal investigation without first clearing the MLAT process.

Applicants have not provided a good reason for bypassing the MLAT process.  Pressed at

argument, the Applicants' counsel stated that they did not make any effort to pursue discovery

via the MLAT, but instead filed this § 1782 action, viewing it as faster to move immediately in

court.  Arg. Tr. at 27–30.  But that excuse—that bypassing DOJ review pursuant to the MLAT

would save time—is unpersuasive.  Applicants do not supply any reason to avoid the familiar

treaty process here.  They have not identified any special urgency to their request.  Arg. Tr.

at 30–31.  Applicants' preference for speed would justify a foreign sovereign's end-running the

MLAT process potentially in every case.

Unable to justify avoiding the MLAT process, the Applicants instead argue that the Court

may not properly consider their failure to pursue it.  That, Applicants argue, is because the Court

lacks "subject matter jurisdiction to consider the Nigeria MLAT, even as a discretionary factor,"

because the Respondents do not have "standing" to complaint about Nigeria's decision to bypass

the Nigeria MLAT.  App. Opp'n at 10.  That argument is meritless.  As the Second Circuit has

made clear, even where the statutory requirements of § 1782 are satisfied, "a district court is free

to grant discovery in its discretion."  *Schmitz*, 376 F.3d at 83–84 (citation omitted).  And one

factor that the Supreme Court has specified as properly considered in exercising that discretion is

"whether the § 1782(a) request conceals an attempt to circumvent" policies of the United States.

*Intel*, 542 U.S. at 265.  Respondents have standing to challenge Nigeria's § 1782 application

because it seeks production of their records.  And in that challenge, Respondents were at liberty

to argue that Nigeria's circumvention of the MLAT process weighed against authorizing

discovery under § 1782.  The Court, in turn, is at liberty to consider that circumvention in

assessing whether, in its discretion, to authorize discovery in aid of Nigeria's criminal proceedings without the benefit of DOJ's review.

Nor can Applicants claim surprise that their decision to bypass MLAT processes might be viewed as a basis to deny their § 1782 application.  In a case brought in the Eastern District of Virginia several years ago, the Nigerian government similarly pursued discovery under § 1782 without first utilizing the MLAT process.  The district court, applying the *Intel* factors, denied the § 1782 application.  It noted the lack of a good justification for circumventing the MLAT. *See In re Application of Ekpenyong Ntekim*, No. 13. Misc. 00038 (TSE) (IDD) (E.D. Va. Dec. 18, 2013).  The court found that the third *Intel* factor "compel[led]" the denial of Nigeria's request, because granting the request—there, from the Attorney General and State Commissioner of Justice of Nigeria—"would circumvent the procedure that the Government of the United States and the Government of the Federal Republic of Nigeria have established to facilitate precisely this type of request."  *Id.*  So too, here.  Applicants' ill-explained circumvention of the MLAT weighs strongly against their § 1782 application under the third *Intel* factor.

Respondents assign a specific motive to Applicants' decision not to subject their bid for U.S. discovery to DOJ review.  They note that the integrity and reliability of Nigeria's criminal investigations and prosecutorial determinations is currently an issue in the proceedings before the English Court.  There, they note, P&ID has disputed Nigeria's claim that P&ID corruptly secured the GSPA.  P&ID there has depicted the Nigerian criminal proceedings as politically motivated and inconsistent with due process.  Respondents theorize that Nigeria, by seeking discovery from U.S. entities and citizens in a manner that bypasses MLAT review, seeks to avoid scrutiny by U.S. authorities into the integrity of their criminal proceedings, and to avoid scrutiny into whether Nigeria is seeking discovery from the VR entities for the improper purpose of

attempting to undermine the arbitral Award issued against it.  VR Mem. at 10–12; *see Intel*, 542 U.S. at 264–65 (third discretionary factor aims to assure compliance with "foreign proof-gathering restrictions" and "other policies of a foreign country or the United States").

Respondents' theory is plausible.  But the limited record on this application does not permit the Court to reliably assess whether a desire to avoid uncomfortable or fatal DOJ scrutiny prompted Applicants to skip the MLAT process.  One data point supports Respondents' concern. In the immediately prior § 1782 application, the Court finds, Applicants misled Judge Schofield. Before her, they denied any intention to use the U.S. discovery they sought to attack the arbitral Award.  They depicted the discovery sought as intended for use in criminal proceedings and investigations in Nigeria and termed P&ID's argument that the Applicants "may seek to cite to documents produced" in the English proceedings as "rank speculation."  First § 1782 Application, Dkt. 17 at 4.  However, the record reveals that the Applicants did just that.  They furnished the English Court with U.S. bank records which, Applicants claimed, supported their theory of bribery by P&ID.  *See* App. Letter; English Award at [196]; VR Reply at 10.  And Applicants' attempt to justify as truthful their representation to Judge Schofield falls flat.  At argument before this Court, Applicants offered that, at the time of the earlier application, "we did not know what we would receive in response" to the § 1782 subpoenas sought from Judge Schofield.  Arg. Tr. at 33.  But those subpoenas sought the very U.S. bank records that Applicants utilized in London.  VR Reply at 10; App. Letter.

For the above reasons, the third *Intel* factor powerfully supports exercising the Court's discretion to deny the instant § 1782 application.  On the facts at hand, the Court cannot find a sound justification for Nigeria to forgo the MLAT review procedure.  On the contrary, the Court finds that the DOJ review contemplated by the MLAT would serve salutary purposes here,

including helping determine whether, in whole or part, the materials sought are genuinely intended for use in a criminal prosecution or investigation, or whether they are sought for the improper purpose of fortifying Nigeria's attempt in the English courts to void the multi-billion-dollar arbitral Award against it.

### 4.     The Fourth *Intel* Factor

Respondents give modest attention to the fourth *Intel* factor, which inquires whether the discovery sought is "unduly intrusive or burdensome."  They term Applicants' 56 discovery requests "overly broad" and indicative of a "fishing expedition."  VR Reply at 8, 10.  And they point to the subpoena requests for documents and communications concerning the enforcement of the arbitral Award, which they contend are unrelated to the criminal proceedings in Nigeria. *See* VR Mem. at 12–13 (quoting subpoenas); Arg. Tr. at 18.  Respondents theorize that the Applicants, by seeking information from P&ID part-owner VR and its affiliates, improperly seek insights into their adversaries' litigation strategy in seeking to enforce the Award.  Arg. Tr. at 19. *See, e.g.*, Subpoenas at 5–6 (subpoena requests for "[a]ll documents and communications between VR Advisory and Lismore Capital concerning the acquisition of Process & Industrial Developments or any of its assets, including without limitation the GSPA or any award granted in the Arbitration in connection with the GSPA"; "[a]ll documents and communications concerning the enforcement of any award granted in the Arbitration in connection with the GSPA"; and "[a]ll documents concerning any transactions between VR Advisory and any person or entity in Nigeria regarding the Arbitration, or the GSPA").  Applicants counter that, much as the GSPA allegedly resulted from bribery, P&ID may have engaged in bribery or corruption in procuring the Award, and that the subpoena requests relating to the arbitration are justified as a means of probing continuing illegality.  App. Opp'n at 4–5, 8

21

Even accepting Applicants' representation that bribery in connection with procuring the Award is within the scope of Nigeria's criminal investigation, various document requests in the subpoena appear to sweep well beyond that subject.  The above requests would require VA and its affiliates broadly to produce all records relating to the arbitration—and to the ongoing process of enforcing the Award against Nigeria.  At a minimum, therefore, were the § 1782 subpoenas otherwise to be upheld, they would need to be carefully pruned.  And to the extent the breadth of the requests for materials relating to the arbitration and its enforcement may reflect an intention to use U.S. discovery for purposes outside the contemplation of § 1782, there is support for the discretionary denial of the application.  *See, e.g.*, *Mees*, 793 F.3d at 299 n.10 ("A request that appears only marginally relevant to the foreign proceeding may in certain cases suggest that the application 'is made in bad faith, for the purpose of harassment, or unreasonably seeks cumulative or irrelevant materials,' . . . which would be grounds for a discretionary denial of discovery." (quoting *Euromepa*, 51 F.3d at 1101 n.6)).

The Court therefore views the fourth *Intel* factor as favoring denial of the § 1782 application.

### 5.     Overall Assessment of Discretionary Factors

For the reasons above, even assuming that the statutory factors are satisfied, the *Intel* factors, considered in combination, compellingly favor denying the present application under § 1782 for discovery from U.S. entities and persons.  The third *Intel* factor weighs heavily in this direction, and the fourth lends support to this outcome.  To the extent the first and second factors are consistent with the Application, they merit only limited weight.  In so holding, the Court has been mindful that it is not to mechanistically apply these factors, but should "take into account any other pertinent issues arising from the facts of the particular dispute." *Kiobel by Samkalden*,

895 F.3d at 245 (*Intel* factors "are not to be applied mechanically."). Assessing the Application flexibly and holistically, the Court finds that the discretionary factors clearly require its denial.

## CONCLUSION

For foregoing reasons, the Court grants Respondents' motion and vacates its grant of discovery pursuant to § 1782. The Clerk of Court is respectfully directed to terminate the motion pending at Docket 20 and to close this case.

SO ORDERED.

*Paul A. Engelmayer*

Paul A. Engelmayer
United States District Judge

Dated:  November 6, 2020
         New York, New York